## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| THERESA EGAN, BRIAN BARKER, and SABRINA BUDDEN-WRIGHT, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiffs, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| v. | |
| FASTAFF, LLC and U.S. NURSING CORPORATION, | **Jury Trial Demanded** |
| Defendants. | |

Plaintiffs Theresa Egan, Brian Barker, and Sabrina Budden-Wright ("Plaintiffs") bring this class and collective action complaint against Fastaff, LLC and U.S. Nursing Corporation ("U.S. Nursing") (collectively "Fastaff" or "Defendants"), on behalf of themselves and all others similarly situated. Plaintiffs make the following allegations based upon personal knowledge as to their own actions and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.      Travel nurses serve a valuable role in our nation's healthcare system. Hospitals, clinics, and other healthcare facilities rely on skilled travel employees to fill short-term nursing employment gaps on a temporary basis. To fill these roles, healthcare facilities use intermediary staffing agencies to employ the travelers, negotiate pay rates, and schedule assignments. Traveling nurses have played an especially critical role since the start of the COVID-19 pandemic, as many facilities experienced severe staffing shortages that required temporary assistance to continue providing quality healthcare.

2.      But a troubling practice has emerged. Fastaff is offering contracts to travel nurses with a fixed-term assignment at an agreed-upon pay rate. After the nurse accepts the position and starts the assignment, Fastaff makes a "take-it-or-leave-it" demand to accept less pay or be terminated. Of course, most nurses have no choice but to continue working the assignment at the lower rate because they have no reasonable alternatives for comparable employment: they have already incurred travel expenses, secured short-term housing, and uprooted their lives to accept the assignment.

3.      Fastaff is knowingly engaging in these "bait-and-switch" practices to maintain the significant profit margins it had become accustomed to during the COVID-19 pandemic. This lawsuit seeks recovery for the pay losses Plaintiffs and other travelers experienced as the result of Fastaff's predatory business practices, which Fastaff blame on the facilities it staffs.

4.      Additionally, Fastaff is underpaying its travel employees for overtime hours worked. By law, employers must pay their employees one-and-a-half times their "regular rate" for all hours worked over forty in a workweek. But in determining this "regular rate," Fastaff has only included its employees' direct hourly cash wage among other items and has excluded, in violation of the law, other parts of its employees' compensation packages, thereby resulting in an artificially low rate of pay for overtime hours worked.

## JURISDICTION, VENUE, AND PARTIES

5.      Plaintiff Theresa Egan is a citizen of California who accepted a travel assignment from Fastaff to work at a healthcare facility located in California. Her written Consent to Join this case is attached and incorporated as **Exhibit 1**.

6.      Plaintiff Brian Barker is a citizen of Ohio who accepted a travel assignment from Fastaff to work at a healthcare facility located in Massachusetts. His written Consent to Join this case is attached and incorporated as **Exhibit 2**.

7.      Plaintiff Sabrina Budden-Wright is a citizen of Texas who accepted a travel assignment from Fastaff to work at a healthcare facility located in Oklahoma. Her written Consent to Join this case is attached and incorporated as **Exhibit 3**.

8.      Fastaff, LLC is a Colorado limited liability company with its headquarters or principal place of business located at 5700 S. Quebec St., Suite 300, Greenwood Village, CO, 80111.

9.      U.S. Nursing Corporation is a Colorado corporation with its headquarters or principal place of business located at 5700 S. Quebec St., Suite 300, Greenwood Village, CO, 80111.

10.     Fastaff and U.S. Nursing are not truly separate and distinct entities, but are "two brands" of one organization. Fastaff and U.S. Nursing are joint employers and/or are integrated to such a degree that they are a single employer in that they both exercised control over Plaintiffs' and other punitive class members' wages, hours, and working conditions, and they shared management, offices, human resources, payroll functions, and had common ownership and/or financial control. Alternatively, to the extent the Court finds that Fastaff and U.S. Nursing are not joint employers, Plaintiffs assert that Fastaff and U.S. Nursing lack true independence from one another and they are a legal alter ego of one another. Thus, it is proper to treat Fastaff and U.S. Nursing as one company for the purposes of this case.

11.     This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000.00, exclusive of interest, attorneys' fees, and costs; and (3) Fastaff and at least one class member are citizens of different states.

12.     This Court has personal jurisdiction over Fastaff and U.S. Nursing as to all claims asserted by Plaintiffs herein because Fastaff and U.S. Nursing are "at home" in Colorado and therefore subject to general jurisdiction in this forum.

13.     This Court also has subject matter jurisdiction over the Fair Labor Standards Act ("FLSA") claims of Plaintiffs and all others similarly situated pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and over all related state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because this is the District in which Fastaff and U.S. Nursing resides and a substantial part of the conduct at issue in this case occurred in this District.

## STATEMENT OF FACTS

**A.    Fastaff and U.S. Nursing Jointly Employed Plaintiffs.**

15.     Fastaff and U.S. Nursing jointly employed Plaintiffs and other similarly situated travel nurses within the meaning of the FLSA and state law.

16.     There is no meaningful distinction between Fastaff and U.S. Nursing with respect to Plaintiffs' employment. For example, Fastaff and U.S. Nursing refer to themselves as separate "brands" of the same company. The two companies share a corporate headquarters in Greenwood

Village, Colorado.[1] They also share a President and CEO, Bart Valdez. The prior President and CEO now sits on the Board of Directors of the two companies.[2]

17.    The companies perform the same work in the same industry. Both have provided staffing solutions for three decades. According to Mr. Valdez, "Fastaff has been a premier provider of Rapid Response℠ travel nurse staffing, and U.S. Nursing has been the industry leader in comprehensive job action consulting and staffing solutions."[3]

18.    Both Fastaff and U.S. Nursing were acquired by Cornell Capital and Trilantic North America in early 2021.[4]

19.    The companies hold themselves out as sharing infrastructure and technology. "Together, Fastaff and U.S. Nursing partner with many of the nation's largest and most prestigious healthcare facilities, as well as small community hospitals, using a scalable, centralized infrastructure and shared technology."[5]

20.    Fastaff and U.S. Nursing govern their employment of travel nurses and other health care professionals with a form Assignment Agreement Letters ("AAL"). Plaintiffs Egan, Barker and Wright all received such AALs. These contracts often reference both Fastaff and U.S. Nursing and treat these supposedly separate companies as synonymous trade names.

---

[1]    https://www.fastaff.com/article/fastaff-and-us-nursing-announce-new-president-and-ceo-bart-valdez

[2] *Id.*

[3]    https://www.prnewswire.com/news-releases/cornell-capital-and-trilantic-north-america-to-acquire-fastaff-and-us-nursing-301234805.html

[4] *Id.*

[5] *Id.* (emphasis added)

21.      Plaintiffs also received both a Fastaff Employee Handbook for Travelers and a U.S. Nursing Employee Handbook. The handbooks both include a "Key Contact Information" list which provides contact information for a service department, emergency contact, housing and travel department, human resources, worker's compensation, and employee injury counselor—all of which are the same phone numbers in each handbook. The online employee portal for both Fastaff and U.S. Nursing directs employees to myportal.fastaff.com.

22.      Plaintiffs would also receive paystubs from Fastaff, U.S. Nursing, or both depending on the week or pay period.

23.      Each Plaintiff was an acknowledged employee of Fastaff, but it is clear that U.S. Nursing (to the extent it is a separate corporate entity) jointly employed Plaintiffs. Both companies had the power to hire and fire Plaintiffs. Both companies supervised and controlled the working conditions and conditions of employment for Plaintiffs, including scheduling. Both companies determined the rate and method of pay for Plaintiffs. Both companies maintained employment records for Plaintiffs.

24.      Alternatively, Plaintiffs assert that the two companies are alter egos of one another.

25.      Fastaff and U.S. Nursing are referred to throughout collectively, as "Fastaff."

**B.      Fastaff's Bait-and-Switch Tactics and Improper Pay Rate Reductions**

26.      Fastaff holds itself out as one of the premier travel nursing agencies in the country. On its website, Fastaff represents that "[o]ver the last 30+ years, Fastaff has grown to become a premier staffing partner, providing urgent and crucial temporary nurses to hospitals in need while

6

offering our travel nurses the highest pay in the industry."[6] It claims that the company "strive[s] to maintain unrivaled opportunities, so our nurses are the first to succeed in their career." [7] Fastaff further represents that it takes "great care to ensure that our travel nurses enjoy the freedom to work when they want, where they want, while maintaining the lifestyle they want, in addition to enjoying the excitement of travel nursing and the challenge of new experiences." [8] Unfortunately these statements are inconsistent with Fastaff's actions, which are geared towards maximizing its profits no matter the impact on its own employees.

27.    To fill temporary positions, healthcare facilities in need of temporary employment offer staffing agencies like Fastaff a "bill rate" which is a total amount they are willing to pay the staffing agency for every hour worked by a traveling nurse. The staffing agency then deducts costs, overhead, and profit margin from the bill rate and advertises the hourly rate it is willing to pay a traveling nurse to accept the facility assignment.

28.    Fastaff competes with other staffing agencies to contract with healthcare facilities to staff open positions. To win contracts and fill these roles, Fastaff advertises attractive pay packages for assignments across the country intended to entice registered nurses to sign on as an employee of Fastaff and accept a fixed-term assignment: "Our unique and flexible model offers shorter assignments (anywhere from 4 to 13 weeks) with guaranteed hours — another way we care for our team. This flexibility allows our travel nurses to choose how long they want to work,

---

[6] https://www.fastaff.com/about-fastaff-travel-nursing-0.

[7] *Id.*

[8] *Id.*

without sacrificing their financial security. Our team of dedicated professionals works with our nurses every step of the way. From finding the perfect assignment match to arranging travel and housing, troubleshooting, and responding to individual requests and needs, our team is dedicated to ensuring our travel nurses are satisfied with every Fastaff experience."[9] In addition, "Fastaff offers our travel nurses a highly competitive benefits package that includes medical, dental, vision and 401(k) options," among other benefits.[10]

29.    Fastaff knows that to accept these assignments, many nurses must give up their current employment, move to the location of the facility (oftentimes out-of-state, like Plaintiffs here), secure short-term housing, and incur other travel and housing related costs at their own expense.

30.    Fastaff also knows that the process of signing on as an Fastaff employee and accepting a new travel assignment can take weeks or months of preparation. Among other things, it may require filling out forms, securing licensing, passing a physical, getting vaccinations, taking drug tests, satisfying continuing education requirements, and completing training modules.

31.    Fastaff uses form employment agreements for its traveling employees that include the following material terms: the facility name and address, the start and end date for the assignment, the traveler's hourly pay rate, including on-call and charge adjustments, scheduled hours per week, and the traveler's daily housing stipends.

---

[9] *Id.*

[10] *Id.*

32.     But Fastaff knows that its agreements are premised on false promises and that it does not intend to pay its travel employees the hourly rate Fastaff agreed to pay. Fastaff bets on the fact that after a nurse has spent weeks or months procuring an assignment—and taking all the steps necessary to accept that assignment, such as procuring housing, moving, and leaving a current employment—it will not be economically feasible for them to walk away from the assignment after Fastaff unilaterally cuts their pay.

33.     Time and again Fastaff employees report a similar story: after an employee is committed to an assignment—for example the employee has completed pre-job training or already moved across the country and started the assignment—a Fastaff recruiter notifies the employee that it is adjusting rates, asserting that the facility (*i.e.*, Fastaff's client), not Fastaff, unexpectedly adjusted its rates due to "census" changes or staffing needs, which in turn require Fastaff to decrease the employee's pay and/or hours.

34.     It is likely that hundreds or thousands of Fastaff employees have received this type of notification or ones like it. In every instance, Fastaff blames the rate decrease on the *facility* supposedly changing its bill rate (*i.e.*, the amount Fastaff is being paid hourly for the employee's work) in response to a lower census or staffing needs.

35.     Even if a facility did change the bill rate, however, nothing in Fastaff's contract permits it to pass along those decreases onto their unsuspecting employees. After all, *Fastaff and the employee* agreed upon a set rate of pay that was not in any way dependent on the actions of a third party or Fastaff making a pre-determined margin.

36.    In instances where Fastaff's employees refuse to sign a "revised" employment agreement decreasing their pay, Fastaff simply proceeds with unilateral pay reductions or forces them on employees.

37.    Fastaff's pervasive fraud also enables it to compete effectively—albeit unfairly—in the healthcare staffing marketplace. For example, when Fastaff competes with other staffing agencies to fill a travel position, it advertises higher pay packages that are more likely to entice travel employees, knowing that it does not intend to pay that amount after the employees begin the assignment.

38.    Nurses employed by Fastaff across the country report feeling demoralized and taken advantage of by the company's fraudulent pay practices but fear blacklisting and potential retaliation if they do not complete their assignment.

**Plaintiff Theresa Egan**

39.    On or before December 3, 2020, Fastaff made an employment offer to Plaintiff Egan which included a fixed-term travel assignment to Daly City, California.

40.    Fastaff's employment agreement offered her a position as an emergency room nurse at Seton Medical Center in Daly City, California from December 14, 2020 to March 6, 2021, with the following compensation package: a base hourly pay rate of $85 with a minimum of 48 scheduled hours per week; an overtime hourly pay rate of $127.50; an hourly call-back rate of $127.50; an hourly on-call rate of $15; and a daily housing stipend of $180.

41.    To comply with her duties under the agreement, Theresa Egan incurred expenses traveling away from her home in San Diego, California to Daly City, California, secured short-term living arrangements, and forwent other employment opportunities.

42.     In reliance on the foregoing material terms, Plaintiff Egan accepted Fastaff's offer of employment by executing Fastaff's form AAL on December 3, 2020.

43.     During her original assignment, on or before February 15, 2021, Fastaff offered Plaintiff Egan a contract extension for her position as an emergency room nurse at Seton Medical Center in Daly City, California from March 7, 2021, until June 5, 2021, with the exact same compensation package as her December 2020 agreement.

44.     In reliance on the foregoing material terms, Plaintiff Egan accepted Fastaff's offer to extend her employment by executing Fastaff's form AAL on February 15, 2021 and forewent other employment opportunities.

45.     On March 4, 2021, three days before her extension was set to go into effect, Fastaff made Theresa Egan a "take-it-or-leave-it" demand to accept less pay or be terminated. Specifically, Fastaff demanded that she accept a 18% reduction of her base hourly pay rate from $85 to $70 and corresponding cuts in her OT and call-back hourly pay rates from $127.50 to $105 to complete the previously agreed-upon assignment.

46.     Fastaff blamed the pay reduction on the facility. Fastaff told Plaintiff Egan that Fastaff had no say in the rate reduction. Having already committed to the extension weeks prior, Plaintiff Egan had very little choice but to accept the rate cut just days before her new contract was to begin.

47.     After Plaintiff Egan agreed to continue working and signed the AAL on March 4, 2021, Fastaff nevertheless canceled her contract with no notice on March 8, 2021, leaving her without a job.

48.    On March 24, 2021, Fastaff offered to bring Plaintiff Egan back at the same reduced rate from March 30, 2021, to May 29, 2021. After moving back home following the cancelation, Plaintiff Egan accepted the offer to return to Seton Medical Center since she had already taken the necessary steps to ensure compliance with her obligations at that location, and she was unable to find comparable employment in such a short period of time. Theresa Egan had no real choice but to return to work the reduced-rate assignment.

49.    Plaintiff Egan completed her assignment in accordance with her duties. As a result, she suffered monetary losses. At a minimum, the difference between the value of the original agreement and the unilateral pay reduction was more than $10,000.

**Plaintiff Brian Barker**

50.    On or before March 14, 2022, Fastaff made an employment offer to Plaintiff Brian Barker which included a fixed-term travel assignment in Worcester, Massachusetts.

51.    The employment agreement offered him a position as a surgical tech at USN Crisis St. Vincent Hospital in Worcester, Massachusetts from March 21, 2022, until June 18, 2022, with the following compensation package: a base hourly pay rate of $75 with a minimum of 48 scheduled hours per week; an overtime hourly pay rate of $112.50; an hourly call-back rate of $112.50; and an hourly on-call rate of $14.25; and a daily housing stipend of $125.

52.    In reliance on the foregoing material terms, he accepted Fastaff's offer of employment by executing Fastaff's form employment agreement on or before March 14, 2022. To comply with his duties under the agreement, he traveled away from his home to Worcester, Massachusetts, secured short-term living arrangements, and forwent other employment opportunities.

53.     On March 21, 2022, the first day of his agreed-upon 13-week assignment, Fastaff made Brian Barker a "take-it-or-leave-it" demand to accept less pay or be terminated. Specifically, Fastaff demanded that he accept a more than 13% reduction of his base hourly pay rate, from $75 to $65 and corresponding cuts in his OT and call-back hourly pay rates from $112.50 to $97.50 to complete the previously agreed-upon assignment.

54.     Having already spent substantial time and money securing the assignment and taking the steps necessary to ensure compliance with his obligations under the agreement, and unable to find comparable employment in such a short period of time, Plaintiff Barker had no real choice but to continue working the assignment at the lower rate. Plaintiff Barker never would have moved across the country and accepted the assignment had he known Fastaff would disregard the parties' agreement and unilaterally cut his pay.

55.     Plaintiff Barker completed his assignment in accordance with his duties. As a result, he suffered monetary losses. At a minimum, the difference between the value of the original agreement and the unilateral pay reductions was more than $7,000.

56.     As set forth above, Plaintiffs Egan and Barker relied on the material terms of their agreements including: the fixed assignment term, the payment package, and the guaranteed hours or days in accepting their offers; they believed the assignment was worth foregoing other employment, relocating, and incurring the associated professional and personal costs of accepting the travel assignment. In addition, Plaintiffs relied on the fact the foregoing material terms could not be changed without additional consideration and the reasonable expectation that Fastaff would act in good faith and fair dealing and honor its promises or representations. Plaintiffs would not

have accepted the agreement had they known that Fastaff would violate the terms and spirit of the agreement.

57.    There is no legal justification for Fastaff's conduct. Even if Fastaff's client no longer needed as much staff or decided to reduce the bill rate, for example, nothing in the terms of the form agreement authorizes Fastaff to unilaterally adjust pay rates to account for new circumstances, whether foreseeable or not.

58.    The "revised" agreements that Plaintiffs and other similarly situated employees were coerced to sign are not enforceable because an effective contract modification or accord requires the exchange of new consideration. As alleged herein, there was no exchange of new consideration because Plaintiffs were compelled to undertake the same obligations for less pay. Consequently, Fastaff cannot relieve itself of its contractual obligations under one contract by coercing acceptance of a second contract with less favorable terms.

**C.    Fastaff's Miscalculation of Its Employees' Regular Rate of Pay and Resulting Failure to Lawfully Pay Overtime.**

59.    By law, employers must pay their employees one-and-half times their "regular rate" for all overtime hours (*i.e.*, hours over 40 in a single workweek) worked. In addition to the bait-and-switch tactics discussed above, the reduced overtime rate that Fastaff paid Plaintiffs failed to compensate them at 1.5 times their regular rate of pay in violation of the FLSA and state overtime statutes.

60.    As a general matter, an employee's "regular rate" is "deemed to include all remuneration for employment paid to, or on behalf of, the employee," but excludes, *inter alia*, "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other

similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e).

61.    In calculating the overtime rate paid to its employees, Fastaff wrongfully excluded from their regular rate stipends and allowances paid to its employees, including a "On Call" pay, "Call Back" pay, and "Housing Stipend," even though these payments functioned as a form of compensation as part of its' employees' pay package. For instance:

  a. Prior to her rate reduction, Plaintiff Theresa Egan was paid overtime at a rate of $127.50 per hour, or 1.5 times her base hourly pay rate of $85. Similarly, after her pay was reduced, she was still paid overtime at a rate of 1.5 times her new base hourly rate. Her Daily Housing Stipend of $180 was never included in the calculation of her regular rate in violation of federal and California law;

  b. Prior to his rate reduction, Plaintiff Brian Barker was paid overtime at a rate of $112.50 per hour, or 1.5 times a regular rate of $75. Similarly, after his pay was reduced, he was still paid overtime at a rate of 1.5 times his new base hourly rate ($64 base rate and $97.50 OT rate). His Daily Housing Stipend of $125 was never included in the calculation of his regular rate in violation of federal and state law;

  c. Plaintiff Sabrina Budden-Wright was paid overtime at a rate of $127.50 per hour, or 1.5 times her base hourly pay rate of $85. Her Daily Lodging Stipend of $96 was never included in the calculation of her regular rate in violation of federal and state law.

62.    Each Plaintiff worked more than 40 hours in, at least, one workweek during their contracts with Fastaff during which these forms of compensation were not included in their regular rate of pay in violation of federal and applicable state law.

63.    For example, during the workweek of April 11 through April 17, 2021, Plaintiff Theresa Egan worked 52.5 hours for Fastaff in California. During that workweek she worked 12.5 hours of overtime under both federal and California law. Fastaff paid her $105 per hour for those hours of overtime. However, Fastaff also paid Plaintiff Egan $1,260 (nominally) for lodging. This

"stipend" payment is actually wages that must be included in Plaintiff Egan's regular rate of pay for overtime hours. Factoring in that payment, Plaintiff Egan's regular rate of pay was $94 per hour during that workweek. As a result, Fastaff was required under federal and California law to pay Plaintiff Egan $141 per hour of overtime for a total of $2,256 that workweek for overtime. But Fastaff only paid her overtime of $1,680 during that workweek, meaning she was underpaid by, at least, $576. This sum is also subject to liquidation under federal and state law meaning that, for this single workweek, Fastaff owes Plaintiff Egan, at least, $1,152. This pattern repeated itself throughout the course of Plaintiff Egan's employment with Fastaff where the company consistently failed to include all her compensation in her regular rate of pay, meaning she was routinely underpaid for hours over 40 in a workweek or eight or 12 hours in a single workday.

64.    As another example, during the workweek of July 10 through July 16, 2022, Plaintiff Brian Barker worked 48.02 hours for Fastaff in Massachusetts. During that workweek he worked 8.02 hours of overtime under both federal and Massachusetts law. Fastaff paid him $211.50 per hour for those hours of overtime. However, Fastaff also paid Plaintiff Barker $865.27 (nominally) for lodging. This "stipend" payment is actually wages that must be included in Plaintiff Barker's regular rate of pay for overtime hours. Factoring in that payment, Plaintiff Barker's regular rate of pay was $153.02 per hour during that workweek. As a result, Fastaff was required under federal and Massachusetts law to pay Plaintiff Barker $229.53 per hour of overtime for a total of $1,840.82 that workweek for overtime. But Fastaff only paid him overtime of $1,696.31 during that workweek, meaning he was underpaid by, at least, $144.51. This sum is also subject to liquidation under federal and state law meaning that, for this single workweek, Fastaff owes Plaintiff Barker, at least, $289.02. This pattern repeated itself throughout the course of

Plaintiff Barker's employment with Fastaff where the company consistently failed to include all his compensation in his regular rate of pay meaning he was routinely underpaid for hours over 40 in a workweek.

65.    As another example, during the workweek of October 3 through October 9, 2021, Plaintiff Sabrina Budden-Wright worked 48 hours for Fastaff in Oklahoma. During that workweek she worked 8 hours of overtime under both federal and Oklahoma law. Fastaff paid her $127.50 per hour for those hours of overtime. However, Fastaff also paid Plaintiff Budden-Wright $672 (nominally) for lodging. This "stipend" payment is actually wages that must be included in Plaintiff Budden-Wright's regular rate of pay for overtime hours. Factoring in that payment, Plaintiff Budden-Wright's regular rate of pay was $99 per hour during that workweek. As a result, Fastaff was required under federal and Oklahoma law to pay Plaintiff Budden-Wright $148.50 per hour of overtime for a total of $1,188 that workweek for overtime. But Fastaff only paid her overtime of $1,020 during that workweek meaning she was underpaid by, at least, $168. This sum is also subject to liquidation under federal and state law meaning that, for this single workweek, Fastaff owes Plaintiff Budden-Wright, at least, $336. This pattern repeated itself throughout the course of Plaintiff Budden-Wright's employment with Fastaff where the company consistently failed to include all her compensation in her regular rate of pay meaning she was routinely underpaid for hours over 40 in a workweek.

66.    Fastaff's exclusion of the various pay rates, stipends, and allowances paid to its employees, including the "On Call" pay, "Call Back" pay, and "Housing Stipend" from said employees' "regular rate" in calculating overtime was wrongful and in violation of the law, in that:

        d.    Said payments functioned as compensation for the employees' hours of employment;

e. Said payments were tied to the number of hours worked, rather than the amount of expenses actually incurred;

f. Said payments varied with the number of hours worked per week, such that if an employee missed one or more shifts, said payments would be reduced a corresponding amount;

g. Said payments did not vary with the amount of expenses an employee actually incurred, nor were they calculated to approximate actual expenses. Employees were not required to document expenses, nor provide any attestation that he or she actually incurred a particular amount of expenses in a given period;

h. Upon information and belief, said payments were not limited to employees who were actually traveling, but instead could be received by local employees who worked proximate to their residence; and

i. Upon information and belief, employees could roll over extra shifts worked in a previous week avoid a *pro rata* reduction in said payments occasioned by having missed one or more shifts in a given week.

67. Fastaff classified this form of compensation as expense reimbursement to avoid paying payroll taxes on these wages and to avoid paying materially increased overtime rates, particularly given that many travel nurses are guaranteed more than 40 hours per week.

68. As a result of Fastaff's failure to properly calculate its employees' regular rates, Plaintiffs and other similarly situated employees were not paid for all overtime worked in accordance with the law.

69. At all times material herein, Plaintiffs and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

70. The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of

goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

71.     At all relevant times, Fastaff has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has an annual gross volume of sales made or business done of not less than $500,000.

72.     During all relevant times to this action, Fastaff acted as the "employer" of Plaintiffs and other similarly situated employees within the meaning of the FLSA. 29 U.S.C. § 203(d).

73.     During all times relevant to this action, Plaintiffs and other similarly situated employees were Fastaff's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

74.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

75.     Although the FLSA contains some exceptions (or exemptions) from the overtime requirements, none of those exceptions (or exemptions) applies here.

76.     Plaintiffs and other similarly situated employees are victims of uniform and unlawful compensation policies.

77.     Plaintiffs and other similarly situated employees are entitled to damages equal to the mandated overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Fastaff acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

78.    Fastaff has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Fastaff acted in good faith or with reasonable grounds in failing to pay overtime compensation, Plaintiffs and other similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

79.    As a result of these violations of the FLSA's overtime pay provisions, compensation has been unlawfully withheld by Fastaff from Plaintiffs and other similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Fastaff is liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## CLASS ACTION ALLEGATIONS

80.    <u>Class Definitions</u>: Plaintiffs bring this action individually and on behalf of other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(2), and/or 23(c)(4), Plaintiffs seek certification of the foregoing classes and subclasses, defined as follows:

> <u>The Class</u>: All persons who entered into an agreement with Fastaff and whose total compensation was reduced before the end of the agreed upon term.

> <u>State Wage Payment Laws Class</u>: All persons who entered into an agreement with Fastaff to work at a facility or location in Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New

Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, or Wyoming and whose total compensation was reduced before the end of the agreed upon term.

The California Labor Code Class: All persons who entered into an agreement with Fastaff to work at a facility or location in California who (1) had their total compensation reduced before the end of the agreed upon term; and/or (2) who worked more than 40 hours in a workweek or 8 hours in a single workday and whose regular rate of pay for overtime purposes did not include stipends for whose regular rate of pay did not include the "On Call" pay, "Call Back" pay, or "Housing Stipend" (or their equivalents by any other name).

The California § 970 Class: All persons who entered into an agreement with Fastaff who traveled into, out of, or within California for purposes of that assignment and had their total compensation reduced before the end of the agreed upon term.

The California UCL Class: All persons who entered into an agreement with Fastaff to work at a facility or location in California who had their total compensation reduced before the end of the agreed upon term.

State Unpaid Overtime Class: All persons who entered into an agreement with Fastaff to work at a facility or location in Alaska, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Kentucky, Michigan, Minnesota, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, Washington, West Virginia, or Wisconsin who worked more than 40 hours in a workweek and whose regular rate of pay did not include the "On Call" pay, "Call Back" pay, or "Housing Stipend" (or their equivalents by any other name).

81.    Excluded from the Class are the Court and its officers, employees, and relatives; Fastaff and its subsidiaries, officers, and directors; and governmental entities.

82.  <u>Numerosity</u>: the Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as Fastaff employs thousands of similarly situated individuals across the United States.

83.  All members of the Class are ascertainable by reference to objective criteria, as Fastaff has access to addresses and other contact information for Class members that can be used for notice purposes.

84.  <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiffs and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Common questions include:

j.  Did Fastaff make actionable misrepresentations or omissions?

k.  Were Fastaff's promises, representations, or omissions false or misleading?

l.  Did Fastaff intend for Plaintiffs and the Class to rely on its promises, representations, or omissions?

m.  Should Fastaff have known that such promises or representations would cause justifiable or reasonable reliance?

n.  Did Fastaff owe a duty to disclose to Plaintiffs and the Class to not conceal the truth?

o.  Did Fastaff's conduct in reducing compensation packages breach the travel assignment agreements?

p.  Did Fastaff act in bad faith?

q.  Did Fastaff engage in fraudulent concealment?

r.  Did Fastaff's conduct violate state wage payment statutes?

s.  Did Fastaff fail to include certain forms of non-discretionary compensation in Plaintiffs and class members' regular rate of pay?

   t. Did Fastaff's failure to include forms of compensation such as "On Call" pay, "Call Back" pay, and "Housing Stipend" in calculating its employees' regular rates result in said employees not being adequately compensated for overtime work?

85. <u>Typicality</u>: Plaintiffs' claims are typical of other members of the Class because all of the claims arise from the same course of conduct by Fastaff, the same fraudulent business practice, and are based on the same legal theories.

86. <u>Adequacy of Representation</u>: Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the Class members whom they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

87. <u>Superiority of Class Action</u>: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

88. To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiffs invoke Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

## COLLECTIVE ACTION ALLEGATIONS

89.     Plaintiffs bring their tenth cause of action, the FLSA claim arising out of Fastaff's overtime violations, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective action class:

> All persons currently or formerly employed by Fastaff who worked more than forty (40) hours in a workweek and whose regular rate of pay did not include the "On Call" pay, "Call Back" pay, or "Housing Stipend" (or their equivalents by any other name) at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present.

Plaintiffs' FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

90.     Plaintiffs, individually and on behalf of all others similarly situated, seek relief on a collective basis challenging Fastaff's above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Fastaff's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

### FIRST CAUSE OF ACTION:
### BREACH OF CONTRACT
*On Behalf of Plaintiffs Egan and Barker and the Class*

91.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein and assert this claim in the alternative to their fraud claims to the extent necessary.

92.     Fastaff offered Plaintiffs and class members employment by certain written terms in the agreement.

93.     As consideration for their agreement, Fastaff agreed, among other things, to employ, pay, and provide certain benefits to Plaintiffs and class members under their respective agreements; and Plaintiffs and class members agreed, among other things, to provide undertake certain obligations.

94.     The parties mutually assented to the agreement.

95.     Plaintiffs and class members accepted Fastaff's offer of employment by executing the agreement.

96.     Plaintiffs and class members did all or substantially all the significant things that the agreement required.

97.     After the parties entered the agreement, Fastaff materially breached the agreement by failing to pay Plaintiffs and class members the amounts they promised.

98.     In making take-or-leave-it pay reductions under circumstances where Fastaff knew Plaintiffs and class members would have no choice but to continue working despite the unilateral pay reduction, Fastaff also deliberately breached the implied covenant of good faith and fair dealing inherent in the parties' agreements.

99.     Before the breaches, all conditions precedent had been fulfilled.

100.    Plaintiffs' and class members' damages would not have occurred but for Fastaff's breaches and Fastaff's breaches proximately caused Plaintiffs' and class members' damages.

101.    Following the breaches, Plaintiffs and class members made all reasonable efforts to mitigate resulting damages.

102.    Plaintiffs' and class members' damages include the difference in compensation agreed to under the agreement and the actual compensation Plaintiffs and class members received,

25

as well as the costs, expenses, and losses Plaintiffs and class members incurred as a natural and foreseeable result or consequence of Fastaff's breaches.

## SECOND CAUSE OF ACTION:
## PROMISSORY ESTOPPEL
### *On Behalf of Plaintiffs Egan and Barker and the Class*

103.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

104.    Fastaff made clear and unambiguous promises to Plaintiffs and class members regarding their pay rates that it knew or should have known would induce Plaintiffs and class members to enter into employment agreements with Fastaff and incur certain costs and expenses associated with relocation and housing.

105.    Fastaff did not intend to perform its promises when those promises were made and in fact did not perform them.

106.    Plaintiffs and class members reasonably relied on such promises in entering into employment agreements, relocating, and incurring certain expenses, costs, and losses.

107.    Fastaff's promises in fact induced Plaintiffs and class members to enter into employment agreements, relocate, and incur certain expenses, costs, and losses. Fastaff knew and intended for Plaintiffs and class members to rely on these promises, and Plaintiffs' reliance on these promises was foreseeable on the part of Fastaff.

108.    It would be unjust to allow Fastaff to profit from making such inducing promises and not fulfilling them.

109.    This injustice can only be avoided by forcing Fastaff to fulfill these promises.

### THIRD CAUSE OF ACTION:
### UNJUST ENRICHMENT
*On Behalf of Plaintiffs Egan and Barker and the Class*

110.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein and assert this claim in the alternative to their breach of contract claims to the extent necessary.

111.    Plaintiffs and class members conferred a benefit upon Fastaff by filling open healthcare positions that permitted Fastaff to profit as an intermediary staffing agency.

112.    Fastaff appreciated and had knowledge of the benefit Plaintiffs and class members conferred on it.

113.    Fastaff, by making take-it-or-leave-it demands to reduce Plaintiffs' and class members' pay rates or total compensation in the middle of their contractual terms, kept money that was contractually promised to Plaintiffs and class members and, therefore received, accepted, and retained benefits under such circumstances as to make it inequitable and unjust for Fastaff to retain such benefits without payment of its value.

114.    Under the circumstances, Fastaff should in justice and fairness be compelled to give its benefit to Plaintiffs and class members.

### FOURTH CAUSE OF ACTION:
### FRAUDULENT INDUCEMENT
*On Behalf of Plaintiffs Egan and Barker and the Class*

115.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

116.    Fastaff made material representations of fact as true to Plaintiffs and class members about their pay rates and total compensation that were false or misleading.

117. At the time it made such representations, Fastaff knew that its representations were false, and it would pay Plaintiffs and class members less than the amounts it promised if it so determined.

118. Fastaff's misrepresentations were made with the purpose to defraud Plaintiffs and class members.

119. At the time it made such representations, Fastaff knew Plaintiffs and class members would reasonably and justifiably rely on its representations in entering into their travel assignment agreements, relocating, and incurring certain expenses, costs, and losses.

120. Fastaff had a duty to disclose its representations were false or misleading because Fastaff had superior knowledge that was not reasonably available to Plaintiffs and class members, Plaintiffs and class members were entitled to know given the relation of trust and confidence between them, and disclosure was necessary to prevent Plaintiffs and class members from being misled or mistaken.

121. Plaintiffs and class members did not know Fastaff's representations regarding their pay rate were false or misleading and had a right to rely on and reasonably relied on them in entering into travel assignment agreements, relocating, and incurring certain expenses, costs, and losses.

122. As a result of and in reliance upon Fastaff's fraudulent inducement, Plaintiffs and class members sustained damages as described herein.

### FIFTH CAUSE OF ACTION:
### FRAUDULENT CONCEALMENT
*On Behalf of Plaintiffs Egan and Barker and the Class*

123.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

124.     As their prospective employer, Fastaff owed Plaintiffs and class members a duty to disclose the fact that Fastaff would unilaterally reduce their pay rates or total compensation after they accepted a position that required relocating, and incurring certain expenses, costs, and losses.

125.     Fastaff intended to defraud or deceive Plaintiffs and class members and intentionally failed to disclose the fact that Fastaff would unilaterally reduce their pay rates or total compensation after they accepted a position that required relocating and incurring certain expenses, costs, and losses.

126.     Plaintiffs and the class members did not know that Fastaff would unilaterally reduce their pay rates or total compensation after they accepted a position that required relocating and incurring certain expenses, costs, and losses.

127.     Plaintiffs and class members justifiably relied on Fastaff's fraudulent concealment by entering into employment agreements, relocating, and incurring certain expenses, costs, and losses.

128.     As a result of Fastaff's fraudulent inducement, Plaintiffs and class members sustained damages as described herein, which were substantially caused by Fastaff's concealment.

### SIXTH CAUSE OF ACTION:
### NEGLIGENT MISREPRESENTATION
*On Behalf of Plaintiffs Egan and Barker and the Class*

129.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

130.    As their prospective employer, Fastaff owed Plaintiffs and class members a duty or reasonable care to not make false or misleading statements regarding their employment.

131.    Fastaff knew, should have known, or recklessly disregarded that its representations to Plaintiffs and class members regarding their pay rates and overall compensation reflected in the travel assignment agreements were false or misleading, because it was reasonably foreseeable that Fastaff would make a "take-it-or-leave-it" demand to accept less compensation or be terminated after acceptance of the initial offer.

132.    Fastaff intended for Plaintiffs and class members to act on the false or misleading statements.

133.    Fastaff knew or should have known that Plaintiffs and class members would rely on the false or misleading statements.

134.    Fastaff breached its duty of reasonable care by making the false or misleading statements of past or existing material facts which it did not have reasonable grounds to believe to be true, and thus failed to act as a reasonably prudent person would have under the same or similar circumstances by not making those statements.

135.    Plaintiffs and class members were ignorant of the truth with respect to Fastaff's employment practices, and justifiably relied on Fastaff's negligent misrepresentations by entering into employment agreements, relocating, and incurring certain expenses, costs, and losses.

136.    As a result of Fastaff's negligent misrepresentations, Plaintiffs and class members sustained damages as described herein, which were substantially caused by Fastaff's misrepresentations.

**SEVENTH CAUSE OF ACTION:**
**VIOLATION OF STATE WAGE PAYMENT LAWS**
*By Plaintiffs Barker and Budden-Wright and the State Wage Payment Laws Class*

137.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

138.    At all times relevant to this action, Plaintiffs and class members were employed by Fastaff.

139.    At all times relevant to this action, Plaintiffs and the class members performed work for Fastaff.

140.    Fastaff owes Plaintiffs and the class members wages under the terms of the employment.

141.    Fastaff's course of conduct described above violated wage payment laws of the states listed herein by failing to pay all wages due or owed to Plaintiffs and other similarly situated employees for which the company had agreed to pay. Fastaff's failure to pay all wages due and owing to its employees is in violation of the following state wage payment laws, each of whose relevant terms are materially equivalent such that a common violation may be established on a class-wide basis:

    a.    Alaska – Alaska Stat. § 23.05.140 *et seq.*;

    b.    Arizona – Ariz. Rev. Stat. Ann. § 23–351 *et seq.*;

    c.    Arkansas – Ark. Code Ann. § 11–4–401 *et seq.*;

d.  Colorado – Colo. Rev. Stat. § 8–4–101 *et seq.*;

e.  Connecticut – Conn. Gen. Stat. Ann. § 31–71b *et seq.*;

f.  Delaware – Del. Code Ann. tit. 19, § 1102 *et seq.*;

g.  Florida – Fla. Stat. Ann. § 448.08 *et seq.*;

h.  Georgia – Ga. Code Ann. § 34–7–2 *et seq.*; Ga. Code Ann. § 51-1-6 *et
    seq.*;

i.  Hawaii – Haw. Rev. Stat. § 388–2 *et seq.*;

j.  Idaho – Idaho Code Ann. § 45–608 *et seq.*;

k.  Illinois – 820 ILCS 115/1 *et seq.*;

l.  Indiana – Ind. Code Ann. § 22-2-5–1 *et seq.*;

m.  Iowa – Iowa Code Ann. § 91A.3 *et seq.*;

n.  Kansas – Kan. Stat. Ann. § 44–314 *et seq.*;

o.  Kentucky – Ky. Rev. Stat. Ann. § 337.020 *et seq.*;

p.  Louisiana – La. Rev. Stat. Ann. § 23:631 *et seq.*;

q.  Massachusetts – Mass. Gen. Laws Ann. ch. 149, § 148 *et seq.*;

r.  Minnesota – Minn. Stat. Ann. § 181.101 *et seq.*;

s.  Mississippi – Miss. Code. Ann. § 71–1–35 *et seq.*;

t.  Missouri – Mo. Ann. Stat. § 290.080 *et seq.*;

u.  Montana – Mont. Code Ann. § 39–3–204 *et seq.*;

v.  Nebraska – Neb. Rev. Stat. § 48–1230 *et seq.*;

w.  Nevada – Nev. Rev. Stat. Ann. § 608.060 *et seq.*;

x.  New Hampshire – N.H. Rev. Stat. Ann. § 275:43 *et seq.*;

y.  New Jersey – N.J. Stat. Ann. § 34:11–4.2 *et seq.*;

z.  New Mexico – N.M. Stat. Ann. § 50–4–26 *et seq.*;

aa.  New York – N.Y. Lab. Law § 191 *et seq.*;

bb. North Carolina – N.C. Gen. Stat. Ann. § 95–25.6 *et seq.*;

cc.  North Dakota – N.D. Cent. Code Ann. § 34–14-02 *et s–q.*;

dd. Ohio – Ohio Rev. Code Ann. § 4113.15 *et seq.*;

ee. Oklahoma – Okla. Stat. Ann. tit. 40, § 165.2 *et seq.*;

ff.  Oregon – Or. Rev. Stat. Ann. § 652.120 *et seq.*;

gg. Pennsylvania – 43 Pa. Stat. Ann. § 260.3 *et seq.*;

hh. Rhode Island – R.I. Gen. Laws Ann. § 28–14–2.2 *et seq.*;

ii.  South Carolina – S.C. Code § 41–10–10 *et seq.*;

jj.  South Dakota – S.D. Codified Laws § 60–11–1 *et seq.*;

kk. Utah – Utah Code Ann. § 34–28–3 *et seq.*;

ll.  Vermont – Vt. Stat. Ann. tit. 21, § 342 *et seq.*;

mm.    Virginia – Va. Code Ann. § 40.1–29 *et seq.*;

nn. Washington – RCW 49.48 *et seq.*;

oo. West Virginia – W. Va. Code Ann. § 21–5–3 *et seq.*;

pp. Wisconsin – Wis. Stat. Ann. § 109.03 *et seq.*; and

qq. Wyoming – Wyo. Stat. Ann. § 27–4-101 *et seq.*

142.    Fastaff maintains a company–wide policy and practice of failing and refusing to pay wages due and owing to Plaintiffs and other similarly situated employees, and said policy is willful in nature and not the result of a good-faith mistake.

### EIGHTH CAUSE OF ACTION:
### UNPAID OVERTIME UNDER THE FLSA
#### *By Plaintiffs and the Nationwide FLSA Collective*

143.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

144.    At all times relevant to this action, Plaintiffs and other similarly situated employees were employed by Fastaff.

145.    Fastaff violated the FLSA by failing to pay Plaintiffs for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

146.    Specifically, the FLSA requires that employees are paid one and one-half times their "regular rate" of pay. The "regular hourly rate of pay of an employee is determined by dividing his or her total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

147.    Fastaff improperly reduced its employees' regular rate when calculating overtime by wrongfully excluding certain forms of compensation, including stipends and allowances.

148.    In so doing, Fastaff failed to properly compensate Plaintiffs for overtime worked pursuant to the FLSA.

149.    Fastaff is not eligible for any FLSA exemption excusing their failure to pay overtime.

150.    Plaintiffs are victims of a uniform, company-wide compensation policy.

151.    Plaintiffs are entitled to damages equal to the mandated overtime premium pay within the three years preceding their joining this action, plus periods of equitable tolling, because Fastaff acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

152.    Fastaff has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find Fastaff did act with good faith and reasonable grounds in failing to pay overtime pay, Plaintiffs are entitled to an award of prejudgment interest at the applicable legal rate.

### NINTH CAUSE OF ACTION:
### VIOLATION OF STATE OVERTIME STATUTES
*By Plaintiffs Barker and Budden-Wright and the State Unpaid Overtime Class*

153.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

154.    At all times relevant to this action, Plaintiffs and other similarly situated employees were employed by Fastaff and worked overtime hours. Fastaff knew or should have known that Plaintiffs and other similarly situated employees had worked overtime hours.

155.    Fastaff's course of conduct described herein violated the various overtime statutes of the several states listed in the subsequent paragraph by improperly excluding from its employees' regular rate certain forms of compensation, including stipends and allowances, thereby resulting in unpaid overtime owed to Plaintiffs and other similarly situated employees.

156.    Fastaff's failure to pay overtime to its employees is in violation of the following state overtime laws, each of whose relevant terms are materially equivalent such that a common violation may be established on a class-wide basis:

   a.  Alaska – Alaska Stat. § 23.10.060 *et seq.*;

   b.  Colorado – Colo. Rev. Stat. §§ 8–6–101 *et seq.*; 7 Colo. Code Regs § 1103–1(4) *et seq.*;

   c.  Connecticut – Conn. Gen. Stat. Ann. § 31–76c *et seq.*;

   d.  Delaware – Del. Code Ann. tit. 19, § 1102 *et seq.*;

   e.  Florida – Fla. Stat. Ann. § 448.08 *et seq.*; Fla. Stat. Ann. § 488.01 *et seq.*;

   f.  Georgia – Ga. Code Ann. § 9-3-22 *et seq.*;

   g.  Hawaii – Haw. Rev. Stat. Ann. § 387–3 *et seq.*;

   h.  Illinois – 820 Ill. Comp. Stat. Ann. 105/4a *et seq.*;

   i.  Kentucky – Ky. Rev. Stat. Ann. § 337.285 *et seq.*;

   j.  Michigan – Mich. Comp. Laws Ann. § 408.414a *et seq.*;

   k.  Minnesota – Minn. Stat. Ann. § 177.23 *et seq. et seq.*;

   l.  Missouri – Mo. Ann. Stat. § 290.505 *et seq.*;

   m.  Montana – Mont. Rev. Code Ann. § 39–3–405 *et seq.*;

   n.  Nevada – Nev. Rev. Stat. § 608.018 *et seq.*;

   o.  New Hampshire – N.H. Rev. Stat. Ann. § 279:21 *et seq.*:

   p.  New Jersey – N.J. Stat. Ann. § 34:11–56a4 *et seq.*;

   q.  New Mexico – N.M. Stat. Ann. § 50–4–22 *et seq.*;

   r.  New York – N.Y. Comp. Codes R. & Regs. tit. 12, § 142–3.2 *et seq.*;

   s.  North Carolina – N.C. Gen. Stat. Ann. § 95–25.4 *et seq.*;

    t.   North Dakota – N.D. Admin. Code 46–02–07–02(4) *et seq.*;

    u.   Ohio – Ohio Rev. Code Ann. § 4111.03 *et seq.*;

    v.   Oklahoma – Okla. Stat. Ann. tit. 74, § 840–2.15 *et seq.*;

    w.   Oregon – Or. Rev. Stat. Ann. §§ 653.055, 653.261 *et seq.*;

    x.   Pennsylvania – 43 Pa. Stat. Ann. § 333.104 *et seq.*;

    y.   Rhode Island – 28 R.I. Gen. Laws Ann. § 28–12–4.1 *et seq.*;

    z.   Vermont – Vt. Stat. Ann. tit. 21, § 384 *et seq.*;

    aa. Virginia – Va. Code Ann. § 40.1–29.2 *et seq.*;

    bb. Washington – Wash. Rev. Code Ann. § 49.46.130 *et seq.*;

    cc. West Virginia – W. Va. Code Ann. § 21–5C–3 *et seq.*; and

    dd. Wisconsin – Wis. Admin. Code DWD § 274.015 *et seq.*

157.    Fastaff maintains a uniform, company-wide policy and practice of miscalculating the overtime rate of Plaintiffs and other similarly situated employees, and said policy is willful in nature and not the result of a good faith mistake.

**TENTH CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LABOR CODE § 970**
*By Plaintiff Egan and the California § 970 Class*

158.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

159.    California Labor Code § 970 prohibits employers from influencing or persuading an employee to relocate from one place to another for work, by means of knowingly false misrepresentations regarding, among other things, the kind, character, or existence of such work; the length of time such work will last; or the compensation therefor. Cal. Lab. Code § 970.

160.    Fastaff made representations to Plaintiffs and members of the Class concerning the

kind or character of the work, the length of time the work would last, or the compensation therefor.

161.    Fastaff's representations were false, for the reasons alleged herein.

162.    Fastaff knew when the representations were made that they were false.

163.    Fastaff intended that Plaintiffs would rely on its false representations.

164.    Plaintiffs reasonably relied on Fastaff's false representations and relocated for the

purpose of working for Fastaff.

165.    As a result of Fastaff's misrepresentations, Plaintiffs were harmed, and their

reliance on the Fastaff's representations was a substantial factor in causing such harm.

### ELEVENTH CAUSE OF ACTION:
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### CAL. BUS. & PROF. CODE § 17200
*By Plaintiff Egan and the California UCL Class*

166.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the

foregoing allegations with the same force and effect as if set forth herein.

167.    The California Unfair Competition Law prohibits "any unlawful, unfair or

fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200, *et seq.* Fastaff has engaged

in business acts and practices that, as alleged above, constitute unfair competition in violation of

Business and Professions Code section 17200.

### Unlawful

168.    Fastaff's unlawful conduct under the Unfair Competition Law includes, but is not

limited to, violating California Labor Code § 970, and the other statutes and regulations alleged

herein.

**Unfair**

169.    Fastaff's business practices, as alleged herein, violate the "unfair" prong of the Unfair Competition Law because they resulted in Plaintiffs and members of the Class being misled and denied pay for wages they earned and were promised pursuant to their binding employment agreements. Further, said business practices offend established public policy and are immoral, unethical, and unscrupulous or substantially injurious to employees.

170.    Any reasons, justifications, or motives that Fastaff may offer for the practices described herein are outweighed by the gravity of harm to the victims. The injuries suffered by Plaintiffs and the Class are substantial and are not outweighed by any countervailing benefits to consumers or competition.

**Fraudulent**

171.    Fastaff's conduct, as described herein, is fraudulent because it is likely to deceive members of the public.

172.    Fastaff's bait-and-switch tactics were indeed calculated to deceive—and in fact did deceive—Plaintiffs and members of the Class into accepting travel nursing assignments at a promised rate of pay, only to have that promised rate reduced after they had undertaken obligations under the agreement.

173.    Plaintiffs and members of the Class have standing to pursue this cause of action because they suffered injury in fact and lost money as a result of Fastaff's misconduct described herein.

174.    Furthermore, Plaintiffs and the Class seek restitutionary disgorgement from Fastaff and public injunctive relief prohibiting Fastaff from engaging in the unlawful, unfair, and/or fraudulent conduct alleged herein.

175.    Plaintiffs and members of the Class seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Fastaff's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**TWELFTH CAUSE OF ACTION:**
**FAILURE TO PAY FOR ALL HOURS WORKED**
**VIOLATION OF CALIFORNIA LABOR CODE § 204**
*By Plaintiff Egan and the California Labor Code Class*

176.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

177.    Labor Code § 204 establishes the fundamental right of all employees in the State of California to be paid all wages due in a timely fashion for their work.

178.    IWC Wage Order No. 4-2001 applies to Plaintiffs and Class members' employment with Fastaff, and no exemptions apply.

179.    Pursuant to the IWC Wage Order(s), including Wage Order 4-2001, Fastaff is required to pay Plaintiffs and Class members for all hours worked, meaning the time during which an employee is subject to the control of an employer, including all the time the employee is suffered or permitted to work, whether or not required to do so.

180.    Fastaff violated California law, in relevant part, by failing to compensate Plaintiffs and the Class for all wages earned as required by California Labor Code §§ 204, 223; 8 C.C.R. § 11040; and California Wage Order 4-2001.

181.    Specifically, Fastaff failed to compensate Plaintiffs and Class for all hours worked at the agreed-upon rates as described above.

182.    Fastaff violated California law, in relevant part, by willfully failing to compensate Plaintiffs and the Class for all wages earned and all hours worked in violation of California Labor Code § 204. Fastaff has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of California law. Fastaff's unlawful conduct was willful because, among other reasons described herein, Fastaff purposefully and knowingly reduced the contracted-for rate of pay after inducing Plaintiffs and Class members to travel to or within California as a travel nurse for Fastaff.

183.    As a result of Fastaff's violation of the California Labor Code and applicable Wage Orders, Plaintiffs and the Class have been damaged.

184.    For at least the three years preceding the filing of the Class Action Complaint, Plaintiffs and the Class are entitled to recover unpaid straight time wages in amounts to be proved at trial, plus liquidated damages in an amount equal to the unlawfully withheld wages plus interest, attorneys' fees, and costs pursuant to §§ 218, 218.5, 218.6, 1194, 1194.2.

185.    Plaintiffs are also entitled to penalties available pursuant to California Labor Code § 558.

186.    Plaintiffs and the Class request all relief permitted by law.

**THIRTEENTH CAUSE OF ACTION:**
**FAILURE TO PAY OVERTIME PREMIUM**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 510, 1194**
*By Plaintiff Egan and the California Labor Code Class*

187.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

188.    IWC Wage Order No. 4-2001 applies to Plaintiffs and Class members' employment with Fastaff, and no exemptions apply.

189.    California Labor Code § 1198 provides that it is unlawful to employ persons for longer than the hours set by the IWC without just compensation.

190.    As alleged herein, Plaintiffs and the Class worked in excess of 8 and 12 hours in a single day, in excess of 40 hours in a week and also worked in excess of 8 and 12 hours on the seventh day of work.

191.    As alleged herein, Plaintiffs and the Class members regularly worked time for which they were owed overtime or double time as provide by California law; however, Fastaff paid Plaintiffs and the Class members based on an unlawful regular rate of pay. The regular rate of pay did not include weekly wages that Fastaff referred to as "stipends."

192.    California Labor Code § 510 codifies the right to overtime compensation at one-and-one-half the regular rate of pay for hours worked in excess of 8 hours in one day, 40 hours in one week, or for the first 8 hours worked on the seventh day of work, and to overtime compensation at twice the regular rate of pay for hours worked in excess of 12 hours in a day or in excess of 8 hours in a day on the seventh day of work.

193.    Fastaff failed to pay overtime compensation due to its failure to correctly calculate the regular rate of pay.

194.     Fastaff violated California law, in relevant part, by failing to compensate Plaintiffs and Class members for overtime wages as required by California Labor Code §§ 510, 1194; 8 C.C.R. § 11040; and IWC Wage Order 4-2001.

195.     Fastaff violated California law, in relevant part, by willfully failing to compensate Plaintiffs and the Class for overtime hours as required by law. Fastaff has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of California law. Fastaff's unlawful conduct was willful because, among other reasons described herein, Fastaff knew or should have known that it was not correctly calculating the regular rate of pay or overtime wages of Plaintiffs and Class members. *See, e.g., Clarke v. AMN Servs., LLC*, 987 F.3d 848 (9th Cir.), *cert. denied*, 211 L. Ed. 2d 400, 142 S. Ct. 710 (2021).

196.     As a result of Fastaff's violation of the California Labor Code and applicable Wage Orders, Plaintiffs and the Class have been damaged.

197.     For at least the three years preceding the filing of the Class Action Complaint, Plaintiffs and the Class are entitled to recover unpaid overtime wages in amounts to be proved at trial, plus interest, attorneys' fees, and costs pursuant to California Labor Code § 218.5, 1194.

198.     Plaintiffs are also entitled to penalties available pursuant to California Labor Code § 558.

199.     Plaintiffs and the Class request all relief permitted by law.

### FOURTEENTH CAUSE OF ACTION:
### FAILURE TO FURNISH ACCURATE WAGE STATEMENTS
### VIOLATION OF CALIFORNIA LABOR CODE §§ 226, 1174, 1175
*By Plaintiff Egan and the California Labor Code Class*

200.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

201.    California Labor Code § 226 requires employers to provide employees, on each payday, itemized statements showing, among other things: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee, (8) the name and address of the legal entity that is the employer and, (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

202.    Fastaff willfully violated its obligations under California law, including those under California Labor Code §§ 226(a), *et seq.*, by knowingly and intentionally failing to provide Plaintiffs and the Class with timely and accurate wage statements.

203.    As a direct and proximate result, Plaintiffs and the Class have suffered damages. Among other things, Fastaff's failure to provide accurate wage statements required for employees was in furtherance of Fastaff's above-described scheme to pay overtime to Plaintiffs and the Class at unlawfully low rates that did not include all necessary wages. Fastaff's wage statement failures caused and will cause Plaintiffs and the Class extra work and effort to determine their true wages.

204.    Fastaff violated California Labor Code §§ 1174 and 1175 by knowingly, intentionally, and unlawfully failing to provide Plaintiffs and the Class with timely and accurate wage statements in violation of California Labor Code § 226.

205.    For such violations, Fastaff is liable for the penalties described in Labor Code §§ 226(e), 226.3, and 558.

206.    For failing to maintain records, Fastaff is liable for the penalties described in Labor Code § 1174.5.

207.    Plaintiffs and the Class are entitled to recovery of the greater of their actual damages or $50 for the initial pay period in which a violation occurred and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty per employee of $4,000. Plaintiffs and the Class are entitled to an award of costs and reasonable attorney's fees under California Labor Code § 226(e) and additional relief as described herein and permitted by law.

### FIFTEENTH CAUSE OF ACTION:
### FAILURE TO PAY WAGES DUE ON DISCHARGE/RESIGNATION
### VIOLATION OF CALIFORNIA LABOR CODE §§ 201, 202, 203, 204
*By Plaintiff Egan and the California Labor Code Class*

208.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

209.    Under California Labor Code § 201 (discharge or lay-off) and/or § 202 (resignation), Plaintiffs and Class members who are former Fastaff employees are entitled to timely payment of all wages earned and unpaid, immediately upon the conclusion of their contracts (discharge), termination of their contracts (lay-off), or within 72 hours of notice (resignation).

210.    Plaintiffs and the Class are all former Fastaff employees who either completed their contracts with Fastaff and were discharged, had their contracts terminated by Fastaff, or resigned after Fastaff unilaterally changed their contracted-for compensation. To this day, Plaintiffs and Class members have not received the wages and other compensation they rightfully earned.

211.    Fastaff's failure to pay Plaintiffs and Class members for every hour worked, the contracted-for wages for each hour worked, and proper overtime means that Fastaff also fails to

make timely payment of the wages Class members have earned on regular paydays, in violation of California Labor Code § 204, and timely payment of the wages Class Members have earned when they stop working for Fastaff due to discharge, layoff or resignation, in violation of California Labor Code §§ 201, 202, and 203.

212.    Fastaff willfully refused to pay the Class all wages earned and unpaid at the time of their termination/resignation or within 72 hours thereafter in violation of its obligations under Labor Code §§ 201 and 202, and continues to refuse to pay Class members all wages earned, including overtime compensation.

213.    Fastaff's compensation system clearly violates California's Labor Law such that any belief by Fastaff that wages were not owed to Plaintiffs and Class members would be objectively unreasonable and in bad faith. Despite the ability to make such payment, Fastaff maintained customs, policies, practices, procedures, and routines incompatible with the requirements of California Labor Code.

214.    As a direct and proximate cause of Fastaff's actions, Plaintiffs and Class members have suffered damages.

215.    Plaintiffs are entitled to restitution and statutory penalties (continuation wages) pursuant to California Labor Code § 203, prejudgment interest on unpaid and continuation wages pursuant to California Labor Code § 218.6 and/or California Civil Code § 3287(a), and penalties available pursuant to California Labor Code § 558.

216.    Plaintiffs and the Class request relief as described herein and permitted by law.

## SIXTEENTH CAUSE OF ACTION:
## ENFORCEMENT OF THE CALIFORNIA LABOR CODE PRIVATE ATTORNEYS GENERAL ACT OF 2004
### *By Plaintiff Egan on Behalf of the State of California*

217.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

218.     Plaintiff Egan is an "aggrieved employee" within the meaning of California Labor Code § 2699(c) and a proper representative to bring a civil action as a representative of the State of California and on behalf of herself and other current and former employees of Fastaff in California pursuant to the procedures specified in California Labor Code § 2699.3, because Plaintiff Egan was employed by Fastaff and the alleged violations of the California Labor Code were committed against Plaintiff Egan and other aggrieved employees of Fastaff during the relevant period.

219.     Pursuant to the California Private Attorneys General Act of 2004 ("PAGA"), Labor Code §§ 2698-2699.5, Plaintiff Egan, as a representative of the State of California and on behalf of herself and all other similarly aggrieved employees, seeks to recover civil penalties, including but not limited to penalties under California Labor Code § 2699 for Fastaff's violation of the following Labor Code sections:

a.     Unlawful solicitation of employees by misrepresentation in violation of California Labor Code § 970;

b.     Unlawful failure to make timely payment of all wages due upon termination in violation of California Labor Code §§ 201, 202, 203, and/or 204;

c.     Failure to indemnify employees for expenses and losses in violation of California Labor Code § 2802; and

d.     Failure to indemnify employees for want of ordinary care in violation of California Labor Code § 2800.

220.    Pursuant to California Labor Code §§ 2699.3, on December 28, 2022, Plaintiff Egan provided written notice by online submission to the California Labor and Workforce Development Agency ("LWDA") and by certified mail to Fastaff of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

221.    Plaintiff Egan is in the process of complying with all requirements set forth in California Labor Code § 2699.3 to commence a representative action under PAGA and reserves the right to amend the complaint once compliance is achieved.

## **REQUEST FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Fastaff as follows:

A.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are proper class representatives, and appoint Plaintiffs' counsel as Class Counsel;

B.    That the Court award Plaintiffs and the Class or Subclass(es) compensatory, consequential, general, nominal, and statutory (along with any other damages available at law) to the extent permitted by law and in an amount to be determined at trial;

C.    That the Court issue notice to all similarly situated employees of Fastaff informing them of their right to file consents to join the FLSA portion of this action;

D.    That the Court award Plaintiffs and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

E.    That the Court award Plaintiffs and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

F.    That the Court award statutory and civil penalties according to proof, including but not limited to all penalties authorized by the California Labor Code § 2698 *et seq*.;

G.    That the Court award reasonable attorneys' fees and costs pursuant to California Labor Code § 2699(g)(1), California Civil Code § 1021.5, and/or any other applicable provisions providing for attorneys' fees and costs;

H.    That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses as provided by law;

I.    That the Court award pre-and post-judgment interest at the maximum legal rate;

J.    That the Court disgorge any unjust enrichment or revenue Fastaff gained from its unjust business practices, including the practice of making mid-contract take-it-or-leave-it demands without fair and just compensation; and

K.    That the Court grant all such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all claims so triable.

Dated: December 30, 2022

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ Alexander T. Ricke*
George A. Hanson
J. Austin Moore
Alexander T. Ricke
Crystal Cook Leftridge
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
hanson@stuevesiegel.com
moore@stuevesiegel.com
ricke@stuevesiegel.com
cook@stuevesiegel.com

*Attorneys for Plaintiffs and the Putative Class and Collective*