IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| THERESA EGAN, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>FASTAFF, LLC, *et al.*,<br><br>    Defendants. | Case No. 1:22-cv-03364-MEH<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

Defendants[1] are not entitled to pre-discovery judgment as a matter of law under Federal Rule of Civil Procedure 12(c) as to Plaintiffs'[2] two fraud claims. Defendants previously filed a Rule 12(b)(6) motion to dismiss these very claims. This Court denied that motion, finding that Plaintiffs stated plausible claims for relief for fraudulent inducement and concealment. Even though neither Plaintiffs' well-pleaded fraud allegations nor the Court's findings have changed, Defendants double down by asking the Court for *final judgment on the merits* as to these claims. The sole ground they offer is that they have filed an answer that includes an affirmative defense of ratification and waiver. But Defendants have not and cannot demonstrate that the law entitles them to win on this defense based on undisputed facts alleged in the parties' pleadings. Major pitfalls—legal and factual—are fatal to Defendants' Motion for Judgment on the Pleadings as to

---

[1] Fastaff, LLC and U.S. Nursing Corporation (collectively, "Fastaff" or "Defendants").

[2] Representing the class in this class and collective action are seven named plaintiffs; Defendants Motion implicates only three of these plaintiffs—Theresa Egan, Brian Barker, and Taylor Berdoll ("Plaintiffs")—who were subject to Fastaff's bait and switch practice.

1

Defendants' Affirmative Defense of Ratification and Waiver ("Motion"), which should be denied in full.

First, Defendants' rest their Motion on a faulty legal premise. Contrary to Defendants' incomplete recitation of Colorado law, the defense of ratification and waiver applies only if 1) Plaintiffs, with full knowledge of the truth regarding the false representation or nondisclosure, nevertheless elected to continue to carry out the agreement; *and* 2) a reasonably prudent person under the same or similar circumstances would not have done so.

Second, even if the law were as Defendants suggest, which it is not, the allegations in the Second Amended Complaint ("SAC") do not entitle Defendants to judgment on the merits. Instead, the allegations establish, as a matter of fact, that although Plaintiffs were told their rates were being cut and what the reduced rates would be, Plaintiffs had no knowledge—let alone full knowledge— of the *relevant* truth, i.e., the truth of the fraud. Plaintiffs had no knowledge that Fastaff had a company-wide practice of making mid-contract rate cuts, that Fastaff never intended to honor the rates in the original agreement, that it concealed the likelihood that rates would be cut, and that the hospital was not, in fact, to blame for the rate cut. And the SAC alleges that Fastaff knowingly "entice[d]" nurses to incur travel expense, secure short term housing, and uproot their lives, which placed them in an "economically [in]feasible" position where there was "no real choice" and "no reasonable alternative than to continue at the lower rate." ECF 112 at ¶¶ 2, 32, 33, 36, 50, 52, 60, 67.

Third, Defendants' Motion raises questions of fact that are not suited for resolution on the pleadings. Fastaff has cited *no* cases in which a party has obtained judgment on an affirmative defense of ratification and waiver at the pleadings stage, and Plaintiffs can find none. Each of the

2

authorities Fastaff cites for its ratification and waiver arguments was decided after discovery, either at summary judgment or on post-trial appeal. The Court has already found Plaintiffs plausibly allege that Fastaff "should have disclosed to prospective employees that it allegedly had a pattern of reducing its travel employees' pay once they had begun assignments" or that there was "a 'substantial risk' that Fastaff would do so." ECF 95 at 16. [3] For the same reasons, the fraud claims also survive the present Motion, which this Court should deny.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiffs File Complaints, and Defendants Move to Dismiss.

On December 30, 2022, Plaintiffs filed their Class and Collective Action Complaint against Defendants. ECF 1. In response to Defendants' partial Motion to Dismiss, ECF 32, Plaintiffs filed a First Amended Complaint ("FAC") on October 10, 2023, ECF 37, mooting the 12(b)(6) Motion. ECF 43. Defendants then moved for partial dismissal of Plaintiffs' FAC, challenging the breach-of-contract claims, the quasi-contract claims, the fraud claims, and certain state-law statutory claims. ECF 44. As to the fraud claims, Defendants argued that where employment is at will, an employee cannot establish misrepresentation or reliance concerning the length of employment or rate of pay as a matter of law. ECF 44 at 13. Defendants asserted specifically that because Plaintiff Barker had signed a revised agreement with the lower pay rates before he began working his assignment and "worked the shifts anyway," he failed to state viable fraud claims. ECF 44 at 15.

In an Order issued January 31, 2024, ECF 95, this Court rejected Defendants' arguments. The Court addressed Defendants' challenges to the fraud claims in detail, as discussed below, and

---

[3] All citations to pages within the record refer to the Court's ECF pagination.

3

ultimately held that the claims survive dismissal. ECF 95 at 15–16. The Court's analysis is prescient of Defendants' ratification and waiver defense. Under the Court's reasoning, the fact that "an employee, after allegedly being fraudulently induced to accept an assignment and then placed in an economic position where their only feasible option was to continue the assignment at a reduced wage, . . . continued to work an assignment at that reduced wage does not prove that the employee did not rely on a fraudulent misrepresentation or concealment in initially accepting the assignment." *Id.* at 16.

    **B.    Following Their Answer, Defendants File Pre-Discovery Motion for Final Judgment on Plaintiffs' Fraud Claims Based on Defendants' Affirmative Defense of Ratification and Waiver.**

On February 21, 2024, Plaintiffs filed a Second Amended Complaint ("SAC") to conform their claims to the Court's Order. ECF 112. Defendants' filed an Answer, which asserted twenty-four affirmative defenses, ECF 119 at 83–87. They also filed the present Motion, asking the Court to find that the application of their affirmative defense of ratification and waiver as to Plaintiffs' fraud claims is "apparent on the face of the Complaint." ECF 120 at 2 (citing *Holt v. Gagliardi*, No. 09–cv–02033–REB–KLM, 2010 WL 4318869, at *4 (D. Colo. July 26, 2010), *report and recommendation adopted* 2010 WL 4318654 (D. Colo. Oct 26, 2010) (granting motion for judgment on pleadings where *pro se* inmate's claims were, on the face of the complaint, barred by the statute of limitations).

## II.    APPLICABLE LEGAL STANDARDS

    **A.  Federal Rule 12(c) Motion for Judgment on the Pleadings.**

Defendants style their Motion as a Rule 12(c) Motion for Judgment on the Pleadings. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party

4

may move for judgment on the pleadings."[4] "Judgment on the pleadings is appropriate only when 'the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Olson v. GrowGeneration Corp.*, No. 22-CV-02897-NYW-KAS, 2024 WL 3252053, at *1 (D. Colo. May 10, 2024) (quotations and citations omitted); *see also Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (same).

Given this Court's Order on their Rule 12(b)(6) Motion, Defendants are careful not argue that Plaintiffs fail to plead the elements of fraudulent inducement and concealment. *See, e.g.*, ECF 120 at 11 ("The Court need not analyze the elements of fraud to rule on this motion." (all-caps omitted)). Instead, Defendants argue that their affirmative defense of ratification and waiver entitles them to final judgment on the merits—before discovery—as to Plaintiffs' fraud claims. *Id.* at 1. But Defendants' Motion conflates the Rule 12(b)(6) and Rule 12(c) standards and thus misstates their burden. *See, e.g.*, ECF 120 at 3 (arguing their Motion is wholly "governed by the same standards as a motion to dismiss under Rule 12(b)(6)"); *id*. at 7 (asserting that "Plaintiffs cannot state a plausible claim for fraud").

These standards are distinct, and the distinction makes a difference. "To be sure, 'the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all

---

[4] Plaintiffs note that successive Rule 12 motions are precluded under Rule 12(g)(2). However, "[e]ven though a Rule 12(b) motion has been made … the three defenses listed in Rule 12(h)(2) may be raised on a motion under Rule 12(c) for judgment on the pleadings…" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc*., 861 F.3d 1081, 1101–02 (10th Cir. 2017) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1385 (3d ed., Apr. 2017 update)). These three defenses include failure to (1) "state a claim upon which relief can be granted"; (2) "to join a person required by Rule 19(b)"; and (3) "to state a legal defense to a claim." Rule 12(h)(2).

reasonable factual inferences drawn from well-pleaded factual allegations' with respect to a motion brought under either rule." *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018) (Jackson, J.) (quoting *Douglass v. District of Columbia*, 605 F.Supp.2d 156 (D.D.C. 2009)). But "a party seeking judgment on the pleadings under Rule 12(c) *must make a different showing* than a defendant who requests that the complaint be dismissed under Rule 12(b)(6)—i.e., the Rule 12(c) movant must demonstrate that the law entitles him to win given the undisputed facts that have been alleged in both parties' pleadings." *Id.* (emphasis in original). "[A]nd when considering a motion brought under Rule 12(c), the court *must make a different finding* than the mere determination that the plaintiff's complaint is too deficient to proceed." *Id.* (emphasis in original). Because a Rule 12(c) motion is "directed towards a determination of the substantive merits" of the claims at issue, "federal courts are unwilling to grant a judgment under Rule 12(c) unless it is clear that the merits of the controversy can be fairly and fully decided in this summary manner." 5C Charles Alan Wright et al., Federal Practice & Procedure § 1369 (3d ed., June 2024 update).

Recognizing the stricter standard and higher stakes, this Court has cautioned that "judgment on the pleadings under Rule 12(c) is a drastic remedy" that should be awarded "sparingly." *Aberkains v. Blake*, 633 F. Supp. 2d 1231, 1233 (D. Colo. 2009) (citation omitted). Indeed, a motion for judgment on the pleadings "only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." *Ciber, Inc. v. ACE Am. Ins. Co.*, 261 F. Supp. 3d 1119, 1125 (D. Colo. 2017) (quoting 5C Charles Alan Wright et al., Federal Practice & Procedure § 1367 (3d ed., Apr. 2019 update)). The bottom line is that a defendant cannot prevail on an affirmative defense at the pleading stage unless "the plaintiff pleads itself out of court—that is, admits all the

6

ingredients of an impenetrable defense." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (quotations and citations omitted).

### B. Legal Elements of the Affirmative Defense of Ratification and Waiver.

Defendants' Motion targets the SAC's Counts III (fraudulent inducement) and IV (fraudulent concealment). ECF 120 at 2, 5; *see* ECF 112 at ¶¶ 122–133. Defendants demand judgment on these claims based solely on their affirmative defense of ratification and waiver pleaded in their Answer. ECF 120 at 6 (citing ECF 119 at 83). Under Colorado law,[5] Defendants must plead and prove two elements to prevail on this defense. First, "[t]o establish ratification and waiver, the *evidence must show* that the defrauded party, with full knowledge of the truth regarding the false representation (or, as here, the nondisclosure), nevertheless elected to continue to carry out the agreement." *Bendinelli v. Metro. Prop. & Cas. Ins. Co.*, No. 1:17-CV-00978-KHR, 2018 WL 11025412, at *12 (D. Colo. July 23, 2018) (emphasis added) (quotations and citation omitted) (applying Colorado law). "This determination involves questions of fact, particularly the fact of intent." *Elk River Assocs. v. Huskin*, 691 P.2d 1148, 1152–53 (Colo. App. 1984) (citations omitted). Second—and conspicuously absent from Defendants' Motion—Defendants must plead and prove that Plaintiffs "continued [working at the lower rate] with full knowledge of the actual facts when a reasonable person under the same or similar circumstances would not have done so."

---

[5] Defendants rely almost exclusively on Colorado law in their Motion, noting that "[t]his Court has not yet determined which state's law applies to each Plaintiff's claims" and representing that "there is no outcome determinative conflict between" Colorado law and the laws of other potentially implicated states. ECF 120 at 9 (internal quotation marks and citations omitted). For purposes of responding to Defendants' Motion, and without waiving the right to assert a position regarding the law(s) applicable to their claims, Plaintiffs' Opposition likewise invokes Colorado law and likewise presumes there are no outcome-determinative differences as to the law of ratification and waiver.

Colo. Jury Instr., Civil ("CJI") 19:16. "Even with full knowledge, continuing performance does not constitute a waiver if, under the circumstances, a reasonably prudent person would have done so." *Id.* cmt. 2 (citing *Sellar v. Clelland*, 2 Colo. 532, 549 (1875)).

### III. ARGUMENT AND AUTHORITY

Defendants fall far short of establishing that the SAC "admits all the ingredients of an impenetrable [ratification and waiver] defense" as to the fraud claims. *Fernandez*, 883 F.3d at 1299. First, what Defendants argue are the only relevant facts, *i.e.*, that Plaintiffs signed a revised contract or continued to work at the known, lower rate, *see* ECF 120 at 2; ECF 119 at 83, does not establish ratification or waiver defense as a matter of law, especially under Defendants' incomplete formulation of the legal elements. Second, Plaintiffs' factual allegations go well beyond the narrow picture Defendants attempt to paint. When viewed in full, these allegations destroy Defendants' ratification and waiver defense.  Third, Defendants' request for judgment is premature at best. The Court has already found that Plaintiffs state viable claims for fraudulent inducement and concealment, and the affirmative defense of ratification and waiver raises fact questions that a jury must decide.

### A. Even If Assumed True, Defendants' Artificially Narrow Version of the Facts Fails to Establish Ratification or Waiver as a Matter of Law.

The Court must reject, as a preliminary matter, Defendants' suggestion that just two facts (that Plaintiffs knew of the lower rates and continued working anyway, *see* ECF 120 at 2; ECF 119 at 83) entitle them to judgment on their affirmative defense as a matter of law. This is simply not accurate. *See supra* Sec. II.B. But even if the Court were to accept the faulty factual premise of Defendants' Motion, Defendants *still* would not be entitled to judgment as a matter of law on the fraud claims. This is because, contrary to Defendants' recitation of the elements of ratification

8

and waiver the law also requires that a reasonable person in similar circumstances would *not* have continued to work. *Compare supra*, Sec. II.B., *with* ECF 120 at 7 (quoting *Bendinelli*, 2018 WL 11025412, at *12, for proposition that "[a] party ratifies an agreement when they 'carry it out and receive its benefits'"). *See also id*. at 7 n.1 (quoting a portion of CJI 19:16 but omitting "reasonable person" portion); *id*. at 8 (quoting *In re Donnell*, 479 B.R. at 597). Defendants can point to nowhere in the SAC where such facts are plainly established. The allegations show just the opposite: Plaintiffs had "no real choice" but to continue in spite of the rate cut, ECF 112 at ¶¶ 52, 60, 67, under circumstances that a jury may conclude made it entirely reasonable for them to do so.

**B. Plaintiffs Do Not Plead Themselves out of a Claim. On the Contrary, Plaintiffs' Factual Allegations, Assumed True, Destroy Defendants' Ratification and Waiver Defense.**

Accepting Defendants' flawed factual premise (based on an inaccurate recitation of the law) requires ignoring the significant other well-pleaded factual allegations in the SAC that are relevant and material. Considered together and taken as true, these allegations wholly preclude the ratification and waiver defense. First, Plaintiffs' allegations do not even suggest—let alone conclusively establish—that Plaintiffs had full knowledge of the truth regarding Defendants' battery of false representations. The relevant "truth" here is not simply knowledge of what the reduced pay-rates would be. Plaintiffs' SAC amply alleges that Plaintiffs were denied full knowledge of the "truth," due to Fastaff's concealment and multiple affirmative misrepresentations. Any one of these factual allegations alone is sufficient to destroy the defense that Plaintiffs, "with full knowledge of the truth regarding the false representation (or, as here, the nondisclosure), nevertheless elected to continue to carry out the agreement." *In re Donnell*, 479 B.R. at 597 (citations omitted).

9

Second, even if Plaintiffs' allegations conclusively established their full knowledge of Defendants' fraud—which they do not—Plaintiffs' allegations demonstrate that they had no real choice but to continue their assignments and that a reasonable person in similar circumstances would have done the same. Indeed, the facts as alleged establish that Plaintiffs *lacked* full knowledge of the truth regarding the fraudulent initial travel assignment agreement, *lacked* full knowledge of the circumstances surrounding the rate reduction and the revised agreement, and *did not* "elect" to sign a revised agreement or continue working for reduced pay but were coerced to do so by Fastaff.

> 1. **Plaintiffs allege they did not have full knowledge of the truth of the fraud, which was that Fastaff had a company-wide policy and practice of "enticing" registered nurses into assignments with attractive pay packages and then cutting that pay.**

Defendants' Motion does not touch Plaintiffs allegations that they were unaware, at the time they signed any agreements with Fastaff, that it had a tacit but pervasive practice of imposing mid-contract rate reductions on traveling nurses, ECF 112 at ¶¶ 2, 3, 30, 32, 36, 55, and that Fastaff offered these assignments and entered these contracts knowing that it would not ultimately compensate the nurses as promised. *Id*. at ¶ 36, 41, 48, 55. In particular, Plaintiffs allege that Fastaff "knows that its agreements are premised on false promises and that it does not intend to pay its travel employees the hourly rate Fastaff agrees to pay." *Id.* at ¶ 36. Indeed, Plaintiffs allege that Fastaff knew, at the time it entered into its Assignment Agreement Letters ("AALs") with Plaintiffs, that it had "a pattern of reducing its travel employees' pay once they had already begun or prepared to begin an assignment, but withheld this information" from them. *Id*. at ¶¶ 48, 55. Thus, the pay rates and total compensation represented were "false" and "misleading" because, "[a]t the time it made such representations, Fastaff knew that … it had a practice of reducing its

10

travelers' pay after they had already entered into a travel contract," and it knew that "it would pay Plaintiffs and class members less than the amounts it promised if it so determined." *Id.* at ¶¶ 124, 131. Plaintiffs, however, did not know this when they signed their agreements or when Fastaff communicated their rate cut or when they continued working under the reduced rates. *Id*. at ¶¶ 128, 132; *see also id*. at ¶ 140 ("Plaintiffs and class members were ignorant of the truth with respect to Fastaff's employment practices.").

Although Defendants protest that their Motion doesn't require the Court to re-analyze the elements of fraud, ECF 120 at 11, this Court's Order on Fastaff's 12(b)(6) motion already rejected the very argument that Fastaff makes again here under Rule 12(c). Specifically, the Court concluded that it was "reasonable to infer [from the allegations] that": (1) "Fastaff 'in equity or good conscience' should have disclosed to prospective employees that it allegedly had a pattern of reducing its travel employees' pay once they had begun assignments or had incurred substantial expenses in preparation for such assignments, or that there was allegedly at least a 'substantial risk' that Fastaff would do so"; and (2) "absent Fastaff's disclosure of this practice, prospective employes would have been under a false impression that they would be paid the rate that was listed in their AALs, and that these employees would have reasonably relied on that understanding when deciding to accept the offered assignments." ECF 95 at 15–16 (discussing *Berger v. Sec. Pac. Info. Sys., Inc.*, 795 P.2d 1380, 1383, 1384 (Colo. App. 1990)).

As if predicting the present motion, this Court held that the fact that "an employee, after allegedly being fraudulently induced to accept an assignment and then placed in an economic position where their only feasible option was to continue the assignment at a reduced wage, …continued to work an assignment at that reduced wage does not prove that the employee did not

11

rely on a fraudulent misrepresentation or concealment in initially accepting the assignment." *Id.* at 16. As this Court already found: "absent Fastaff's disclosure of this practice [of reducing its travel employees' pay once they had begun or prepared to begin an assignment], prospective employees would have been under a false impression that they would be paid the rate that was listed in their AALs." *Id.* It is precisely this failure to disclose a material fact that undermines the ratification defense, which requires "full knowledge of the truth regarding the false misrepresentation" or omission. *In re Donnell*, 479 B.R. at 597.

> **2.  Plaintiffs allege Fastaff communicated that the rate reduction was "because of the hospital"; this is not "full knowledge of the truth," which, as alleged, is that Fastaff unilaterally reduced the rates; materiality is fact question for the jury.**

Plaintiffs allege an additional category of fraud that Defendants fail to address at all in their Motion: Fastaff misrepresented to Plaintiffs that the rate reductions were required by the *hospital*, not unilaterally imposed by Fastaff. ECF 112 at ¶¶ 37, 38, 50, 58. In particular, Plaintiffs allege that Fastaff communicated to them that the rate reduction was the fault of the "facility (*i.e.*, Fastaff's client), not Fastaff, unexpectedly adjust[ing] its rates due to 'census' changes or staffing needs, which in turn require[d] Fastaff to decrease the employee's pay and/or hours." *Id.* at ¶ 37. Indeed, "*in every instance*, Fastaff blame[d] the rate decrease on the facility supposedly changing its bill rate (*i.e.*, the amount Fastaff is being paid hourly for the employee's work) in response to a lower census or staffing needs." *Id.* at ¶ 38 (emphasis added). When Fastaff made its "'take-it-or-leave-it' demand to accept less pay or be terminated," ¶ 49, Fastaff told Plaintiff Egan that Fastaff "had no say in the rate reduction," ¶ 50. When Fastaff told Plaintiff Barker that the hospital was experiencing a "census decrease" requiring a decrease in the payrate, ¶ 58, Barker challenged

Fastaff's stated basis for the pay decrease because it was wholly inconsistent with his experience, ¶ 59. Yet he "completed his assignment," ¶ 60.

Plaintiffs clearly allege that these were affirmative misrepresentations. Even if the contracting hospital "no longer needed as much staff" or "decided to reduce the bill rate" (the rate it paid Fastaff), "nothing in the terms of the form agreement [with Plaintiffs] authorizes Fastaff to unilaterally adjust pay rates." *Id.* at ¶ 72. Fastaff justified its conduct by falsely blaming the hospital. Whether these false representations were material to Plaintiffs' ultimate decision to continue working at the lower rate is a question of fact for the jury. *U.S. v. Lawrence*, 405 F.3d 888, 901 (10th Cir. 2005) (statement is material if it "has a natural tendency to influence, or is capable of influencing a decision or action by another," which "is a question of fact for the jury to decide."); *see also U.S. v. Sharp*, 749 F.3d 1267, 1279–80 (10th Cir. 2014) (rational factfinder could conclude that alleged omissions or misstatements were "material"; denying sufficiency-of-evidence challenge to mail fraud convictions).

> **3. Plaintiffs allege they were coerced to sign the revised contract and/or continue working at the lower rate; Plaintiffs' well-pleaded allegations defeat Defendants' ratification and waiver defense because any reasonable person in similar circumstances would have continued working.**

Also completely ignored in Defendants' Motion, Plaintiffs' allegations show that a reasonable person in similar circumstances would have continued working as Plaintiffs did. Plaintiffs allege that they were coerced into signing revised agreements and/or continuing to work their assignments because they had "no real choice," ECF 112 at ¶¶ 52, 60, 67, 69, and Fastaff represented that if they did not sign, they would be terminated, blacklisted, or retaliated against. *Id.* at ¶ 42, 49, 57, 66. Tellingly, Plaintiffs' pay was cut *whether or not they signed a revised*

13

*agreement*. *Id.* at ¶ 40. Plaintiffs were coerced into signing the revised agreements and/or continuing on in their positions by virtue of the financial and geographical commitments they had made in reliance on Fastaff's fraudulent misrepresentations, including those about the consequences and threats of retaliation or blacklisting if the reduced rates weren't accepted. *See id.* at ¶¶ 36, 42.

Defendant's Motion necessarily presumes that the "revised" contract that any Plaintiff signed was an enforceable contract. But, as a factual matter, only Plaintiff Egan alleges that she signed the revised agreement. *Id.* at ¶ 51. Plaintiff Egan was notified that her rate would be cut, and then Fastaff "canceled her contract with no notice, . . . leaving her without a job." *Id.* Fastaff then offered it back to her at the reduced rate, knowing that she "had no real choice but to return to work the reduced-rate assignment." *Id.* at ¶ 52. Plaintiffs Barker and Berdoll allege simply that after receiving notice of Fastaff's take-it-or-leave-it demand to accept reduced pay, they continued to perform under their original contract, and their pay was cut. *See, e.g.*, *id.* at ¶¶ 40, 60, 67. These presumptively true allegations do not amount to an admission by Plaintiffs that they had "full knowledge of the truth regarding the false representation" and "nevertheless elect[s] to continue[d] to carry out the agreement" where a reasonable person in similar circumstances would not have done so. *In re Donnell*, 479 B.R. at 597; CJI 19:16.

As demonstrated above, Plaintiffs come nowhere close to pleading themselves out of Court in their SAC. Their allegations establish they *lacked* full knowledge of the truth regarding Fastaff's false representations and that any reasonable person in similar circumstances *would have continued* the assignment. Fastaff ensured that these nurses would not "walk away" from the assignment even after a unilateral pay cut because, in reliance on Fastaff's misrepresentations (and

14

omissions), Plaintiffs sacrificed other employment opportunities, moved to a new location, secured short term housing, and incurred expenses. In short, Fastaff "bet[] on the fact that" it would "not be economically feasible for them" to do anything but accept the lower rates. ECF 112 at ¶¶ 33, 34, 36. These allegations, presumed to be true as they must be at this stage, defeat Defendants' ratification and waiver defense as a matter of law.

### C. Fact Questions as to Plaintiffs' Claims for Fraudulent Inducement and Concealment—and the Affirmative Defense of Ratification and Waiver—Require that Defendants' Premature Motion Be Denied.

The pleading stage is inappropriate for deciding Defendants' ratification and waiver defense, which hinges on fact questions and which Defendants have the burden of proving with evidence. Each of Defendants' own cited cases addressing ratification and waiver was decided at summary judgment or post-trial, after discovery and presentation of evidence. None were decided on the pleadings. *See* ECF 120 at 4, 7–10 (citing *In re Donnell*, 479 B.R. at 597 (bench trial); *Elk River*, 691 P.2d at 1153 (jury trial); *Bendinelli*, 2018 WL 11025412, at *12 (summary judgment); *Tisdel v. Cent. Sav. Bank & Tr. Co.*, 6 P.2d 912, 918 (Colo. 1931) (jury trial); *Cabot Corp. v. AVX Corp.*, 863 N.E.2d 503, 515 (Mass. 2007) (summary judgment); *Monfort v. Adomani*, No. 18-CV-05211-LHK, 2019 WL 6311378, at *6 (N.D. Cal. Nov. 25, 2019) (summary judgment); *Rosendale v. Mr. Cooper Grp. Inc.*, No. 19-CV-9263 (NSR), 2024 WL 1484248, at *13 (S.D.N.Y. Apr. 5, 2024) (summary judgment)). Here, the Court should similarly let discovery run its course.

### IV.   CONCLUSION

For the reasons discussed above, the Court should deny Defendants' Motion.

15

Dated: July 22, 2024                              Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ Alexander T. Ricke*
George A. Hanson
Alexander T. Ricke
Crystal Cook Leftridge
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
hanson@stuevesiegel.com
ricke@stuevesiegel.com
cook@stuevesiegel.com

*Attorneys for Plaintiffs and the Putative Class and Collective*

## CERTIFICATE RE: LCIVR 7.1(a)

Plaintiffs respectfully note the Court's L.Civ.R. 7.1(a), which requires that "[b]efore filing a motion, counsel for the moving party or an unrepresented party shall confer or make reasonable, good faith efforts to confer with any opposing counsel or unrepresented party to resolve any disputed matter. The moving party shall describe in the motion, or in a certificate attached to the motion, the specific efforts to fulfill this duty." Accord D.C.COLO.MJ Sec.V.1. (noting that failure to comply with L.Civ.R. 7.1(a) "may result in the motion being stricken or denied").

Fastaff failed to include the certification required by the rule, and similarly made no effort to confer with counsel regarding the arguments herein. At 4:13 pm MDT on July 1, 2024, counsel for Fastaff sent an email to Plaintiffs' counsel stating: "I just wanted to give you a heads up that Defendants plan to file a Motion for Judgment on the Pleadings today or tomorrow, seeking dismissal of Plaintiffs' fraud claims." The Motion was filed 33 minutes later, at 4:46 pm MDT.

Counsel for Plaintiffs can confirm, however, that the parties' positions on the viability of Defendants' affirmative defense of ratification and waiver are irreconcilable, and it is unlikely that conferral would have resulted in points upon which Defendants' motion could have been conceded or narrowed.

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024, a true and correct copy of the foregoing was filed with the Clerk of the Court via the CM/ECF system, which will send notice of this filing to all counsel of record via email.

*/s/ Alexander T. Ricke*
Alexander T. Ricke
Plaintiffs' Counsel
