IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03364-CYC

THERESA EGAN, BRIAN BARKER, TAYLOR BERDOLL, SABRINA BUDDEN-WRIGHT, ALISON RIDEOUT, BRITTANY SCALIA, and JENNIFER MASLOWSKY, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

FASTAFF, LLC and
U.S. NURSING CORPORATION,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

**Cyrus Y. Chung, United States Magistrate Judge.**

      Plaintiffs Theresa Egan, Brian Barker, Taylor Berdoll, Sabrina Budden-Wright, Alison Rideout, Brittany Scalia, and Jennifer Maslowsky, nurses who took temporary travel assignments from defendant Fastaff, LLC ("Fastaff"), move to certify several classes to litigate unpaid-overtime claims and to certify several more to address fraud claims. ECF Nos. 130–133. Because three of the four unpaid-overtime classes they seek to certify meet the requirements of Federal Rule of Civil Procedure 23, the Court grants that motion in part. But because the plaintiffs have not shown that their fraud claims are susceptible to class-wide adjudication on the issue of reliance, the Court denies that motion.

## BACKGROUND

      For this motion, the Court accepts as true the Second Amended Complaint's substantive, non-conclusory allegations, *Black v. Occidental Petrol. Corp.*, 69 F.4th 1161, 1174 (10th Cir. 2023), and, where necessary, "probe[s] behind the pleadings" to evaluate the certification

question. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quotation marks omitted). The plaintiffs are nurses who accepted travel assignments from Fastaff to work at healthcare facilities away from home. ECF No. 112 ¶¶ 1, 5–11. Fastaff is a staffing agency, matching such nurses with hospitals having temporary staffing needs. *Id.* ¶¶ 30–31; ECF No. 130-3 at 15:6-19; ECF No. 140-1 at 3. Its employment arrangements with the nurses are summarized in assignment agreement letters ("AAL"), which explain the parameters of the travel assignment, ECF No. 130-3 at 28:17–29:21, such as the assignment's facility, its dates, and its hourly pay rate. ECF No. 112 ¶ 35.

Two Fastaff practices animate the class-certification motions. First, Fastaff pays nurses certain stipends in addition to their hourly pay: since at least 2017, it has offered a housing stipend, purportedly to reimburse travel nurses for lodging while on assignment, ECF No. 130-4 at 10:5–11:11; and since 2023, it has offered a meals and incidental stipend, purportedly to reimburse nurses for their meals while away from home, *id.* at 10:19–11:8. These stipends are calculated on a daily basis for each day the nurse is on assignment, ECF No. 140-3 at 38:22–39:17, but subject to a one-day deduction if the nurse misses a shift that day for non-illness reasons. ECF No. 130-4 at 19:12–20, 36:5–15; *see* ECF No. 112 ¶ 85. Although nurses are expected to work overtime and are paid extra wages based on a multiplier of the nurse's "regular rate" of pay, 29 U.S.C. § 207(a); *see* ECF No. 140-1 at 4, neither the housing stipend nor the meals and incidentals stipend were included in that regular rate. ECF No. 130-4 at 47:20–48:14.

Second, the AALs set a pay rate when the nurse initially agreed to take a Fastaff assignment, and Fastaff's employee handbook indicated that it would pay that rate. ECF No. 130-3 at 57:12–17, 58:25–59:6; ECF No. 130-4 at 21:2–14. But, unbeknownst to nurses, Fastaff also had a "bill rate" — the amount that a healthcare facility would pay Fastaff for a Fastaff

2

nurse's work. ECF No. 130-3 at 63:2–12. Those bill rates could change upon notice from the facility, *id.* at 68:6–24, and, given that Fastaff had a goal of a 20% gross profit margin, *id.* at 74:13–21, if the bill rate dropped in the middle of a nurse's assignment, then the pay rate did too, although Fastaff would "take everything under consideration . . . to avoid reducing pay rate." *Id.* at 78:8–18; *see id.* at 113:19–24. A decision not to follow the facility's rate reduction, of course, "would" have "impact[e]d profit severely." *Id.* at 79:2–8. Prior to signing the AAL, Fastaff generally did not inform nurses about the bill rate, let alone the possibility that their pay rates would drop in tandem with a reduced bill rate. *Id.* at 96:6–12.

Based on these allegations, Egan, Budden-Wright, and Barker brought suit against the defendants in December 2022. ECF No. 1. The parties consented to the jurisdiction of a magistrate judge, ECF No. 21, and an amended complaint added Rideout, Scalia, and Maslowsky. ECF No. 37. The defendants moved to dismiss a number of the plaintiffs' claims, which the Court granted in part, leaving fourteen of the twenty claims intact. *Egan v. Fastaff, LLC*, No. 22-cv-03364-MEH, 2024 WL 719006, at *19 (D. Colo. Jan. 31, 2024). One such claim was for unpaid overtime under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201–219, ECF No. 37 ¶¶ 141–150, and the parties stipulated to conditional certification of an opt-in collective action for that claim, ECF No. 41, which allows "one or more employees" to maintain an action "for and in behalf of himself or themselves and other employees similarly situated" as long as those other employees "give[] [their] consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Following a number of opt-ins, ECF Nos. 53–59, 61, 63–69, 71–77, 79–82, 84–94, 96–102, 104–106, 110, the plaintiffs amended their complaint again, adding Berdoll to their ranks. ECF No. 112.

The Second Amended Complaint ("SAC") brings sixteen claims. ECF No. 112 ¶¶ 110–244. Relevant to these motions, the SAC brings claims under overtime statutes from New Jersey, *see id.* ¶¶ 216–220 (N.J. Stat. Ann. §§ 34:11-56a4, 34:11-56a25), New York, *id.* ¶¶ 234–240 (N.Y. Lab. Law §§ 191, 195, 197, 198), and California, *id.* ¶¶ 172–184 (Cal. Labor Code §§ 510, 1194), asserting that Fastaff's stipend should have been part of their regular rate of pay and, therefore, used to calculate overtime. It also asserts a claim under chapter 652 of Oregon's Revised Statutes. ECF No. 112 ¶¶ 227–233. Finally, the SAC asserts claims for promissory estoppel, unjust enrichment, fraudulent inducement, fraudulent concealment, negligent misrepresentation, and violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and California Labor Code § 970, based on its allegations of pay-rate changes without disclosing the possibility of those changes in the AALs. ECF No. 112 ¶¶ 110–141, 152–171.

These motions followed.

## ANALYSIS

The plaintiffs move for class certification. "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Dukes*, 564 U.S. at 348 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). The device, authorized by Federal Rule of Civil Procedure 23, allows "[o]ne or more members of a class" to "sue . . . as representative parties on behalf of all members." Fed. R. Civ. P. 23(a). Thus, "[w]hen addressing class certification, the district court must undertake a 'rigorous analysis' to satisfy itself that the prerequisites of Rule 23 of the Federal Rules of Civil Procedure are met." *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014).

That rule provides that "[a] class action may be maintained if Rule 23(a) is satisfied," Fed. R. Civ. P. 23(b), and if "one of the three provisions of Rule 23(b) is satisfied." *Brayman v. Keypoint Gov't Sols., Inc.*, 83 F.4th 823, 836 (10th Cir. 2023). Rule 23(a) has four prerequisites:

4

"the class must demonstrate the requisite *numerosity*, *commonality*, *typicality*, and *adequacy* to proceed with a class action." *CGC Holding*, 773 F.3d at 1086. A plaintiff seeking certification bears the burden of demonstrating conformance with Rule 23's requirements, *see id.*, which is not "a mere pleading standard" but instead requires the plaintiff "to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350.

Rule 23(a) first requires that "the class" be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[T]here is 'no set formula to determine if the class is so numerous that it should be so certified,'" *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (quoting *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978)), although "a class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder, while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." Newberg and Rubenstein on Class Actions ("Newberg & Rubenstein") § 3:12 (6th ed.); *Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, 2024 WL 5187565, at *5 (D. Kan. Dec. 20, 2024) ("As a general rule, classes of 40 or more are presumptively numerous."). Nevertheless, because "the numerosity requirement is not 'a question of numbers,'" *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (quoting *Horn v. Assoc'd Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977)), "'the exact number of potential members need not be shown,' and a court 'may make common sense assumptions' to support a finding that joinder would be impracticable." *Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 658 (D.N.M. 2019) (quoting *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002)).

The commonality requirement asks whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). It "requires the plaintiff to demonstrate that the class

5

members have suffered the same injury." *Dukes*, 564 U.S. at 349–50 (quotation marks omitted). That is, the "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation marks omitted). That said, "[t]he existence of a single common question is sufficient to meet the commonality requirement." *Brayman*, 83 F.4th at 837 (citing *Dukes*, 564 U.S. at 359).

Typicality requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The requirement "allows self-interested litigation by the named plaintiffs to necessarily advance the interests of the class as a whole." *Wendell H. Stone Co. v. Five Star Advert., LLC*, No. 19-cv-03157-PAB-STV, 2021 WL 1080398, at *5 (D. Colo. Mar. 17, 2021) (citing Newberg & Rubenstein § 3:29). "The test for typicality is not demanding," Newberg & Rubenstein § 3:29, and "[t]he interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). Indeed, "[d]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Menocal v. Geo Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) (quoting *Colo. Cross Disability Coal.*, 765 F.3d at 1216).

Last, Rule 23(a) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any

conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (quotation marks omitted).

All of the plaintiff's proposed classes in these motions rely on Rule 23(b)(3), which requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Thus, Rule 23(b)(3) requires a showing of predominance and superiority." *Brayman*, 83 F.4th at 837.

"As for the *predominance* requirement of Rule 23(b)(3), it 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* at 837–37 (quoting *CGC Holding*, 773 F.3d at 1087). In that inquiry, "[c]ourts conduct a two-step analysis." *Id.* at 838. "First, for every issue related to the claim, the court must characterize it as common or individual." *Id.* And second, "[t]he court must then weigh the issues to determine whether the common issues predominate." *Id.* "It is not necessary for a plaintiff to show 'that all of the elements of the claim entail questions of fact and law that are common to the class [or] that the answers to those common questions [are] dispositive.'" *Id.* (quoting *CGC Holding*, 773 F.3d at 1087). "[S]o long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately." *Id.* (quoting *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019)).

"Rule 23(b)(3) includes a non-exhaustive list of factors pertinent to the superiority analysis," *Menocal*, 882 F.3d at 915, namely "(A) the class members' interests in individually

controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3) class action is superior when it allows for the 'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Menocal*, 882 F.3d at 915 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997)).

"Finally, although not specifically mentioned in Rule 23, there must be an ascertainable class." *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 555 (D. Colo. 2014). "Related to ascertainability are problems with overbreadth of the class." *Id.* at 557. "A class is overbroad, and should not be certified, if it includes 'a great number of members who could not have been harmed by the defendant's allegedly unlawful conduct.'" *Id.* (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 824 (7th Cir. 2012)).

With that primer in place, the Court turns to the classes the plaintiffs seek to certify.

## I.    The Overtime Classes

With respect to the plaintiffs' allegations regarding Fastaff's stipends, they seek to certify four classes:

> **The California Class**: Any person who entered into an agreement with Fastaff to work at a facility in California who (1) worked more than 40 hours in a workweek or 8 hours in a work day, (2) who was paid a stipend during that workweek or work day, and (3) whose regular rate of pay did not include the value of that stipend from three years (Cal. Lab. Code § 510 overtime claim) or four years (derivative Unfair Competition Law claim) prior to the filing of the Complaint through the date of the Court's class certification order.

> **The New York Class**: Any person who entered into an agreement with Fastaff to work at a facility in New York who (1) worked more than 40 hours in a workweek, (2) who was paid a stipend during that workweek, and (3) whose regular rate of pay

did not include the value of that stipend from six years prior to the filing of the Complaint through the date of the Court's class certification order.

**The New Jersey Class**: Any person who entered into an agreement with Fastaff to work at a facility in New Jersey who (1) worked more than 40 hours in a workweek, (2) who was paid a stipend during that workweek, and (3) whose regular rate of pay did not include the value of that stipend from six years prior to the filing of the Complaint through the date of the Court's class certification order.

**The Oregon Class**: Any person who entered into an agreement with Fastaff to work at a facility in Oregon who (1) worked more than 40 hours in a workweek, (2) who was paid a stipend during that workweek, and (3) whose regular rate of pay did not include the value of that stipend from two years prior to the filing of the Complaint through the date of the Court's class certification order.

ECF No. 130 at 13–14.

## A. Oregon Pleading Issue

The defendants first resist this certification bid by noting that while the SAC pleads violations of chapter 652 of Oregon's revised statutes, ECF No. 112 ¶¶ 227–233, the plaintiffs seek to certify a class under chapter 653, ECF No. 130 at 14 n.11. This mismatch, they say, is fatal to certification of the Oregon class.

It is not. "[A] court need not hold a plaintiff to the class definition in the operative complaint." *Anderson Living Tr. v. ConocoPhillips Co.*, 349 F.R.D. 365, 444 (D.N.M. 2025). To be sure, a complaint's allegations must "afford Defendants sufficient notice of the allegations now being pursued in the motion to certify." *Johansson v. Nelnet, Inc.*, No. 4:20CV3069, 2022 WL 6232089, at *4 (D. Neb. July 21, 2022), *report and recommendation adopted*, No. 20-CV-3069, 2022 WL 6149989 (D. Neb. Oct. 7, 2022). Thus, "when a modified class definition seeks to expand . . . the scope of a putative class by adding . . . new causes of action or claims not included in the complaint, courts may limit that practice where expansion would unfairly prejudice a defendant." *Walden v. Bank of N.Y. Mellon Corp.*, No. 2:20-CV-01972-CBB, 2025 WL 2696463, at *4 (W.D. Pa. Sept. 22, 2025). There is no unfair prejudice here. From the beginning, the

9

defendants were on notice that one of this case's principal claims was that "Fastaff is underpaying its travel employees for overtime hours worked" by "exclud[ing] . . . parts of its employees' compensation packages" from the "regular rate." ECF No. 1 ¶ 4. That is the same theory on which the plaintiffs seek to certify the Oregon class. This is not a case, then, where "the initial complaint d[id] not allege any claims premised on the fact[s]" undergirding the current request for certification. *Johansson*, 2022 WL 6232089, at *4. Nor do the defendants contend otherwise. Without such a lack of notice, the mismatch between complaint and certification alone does not prohibit the plaintiffs' request.

### B. Ascertainability

The defendants next challenge the ascertainability of the state overtime classes. "The issue of adequacy" of class definition "must generally be determined before the court addresses the prerequisites of Rule 23(a)." *Warnick*, 301 F.R.D. at 556. "If the members of the class can be ascertained by reference to objective criteria, then the class is adequately defined." *Id.* (quotation marks omitted). Here, the definition of a class member is one who worked for Fastaff for more than 40 hours in a workweek, was paid a stipend during that workweek, and whose regular rate of pay did not include the value of that stipend. Fastaff maintains payroll information from 2018 to the present electronically, ECF No. 130-4 at 65:23–66:18, and, thus, members in the class can be ascertained by reference to objective criteria.

Nor do the defendants contend otherwise. Instead, they fault the plaintiffs for litigation conduct in previously refusing to narrow the definition of "stipend." ECF No. 140 at 8. Whatever that former conduct, the plaintiffs now make clear that the class definition includes only housing and meals and incidentals stipends. ECF No. 144 at 11. That is the definition of "stipend" for class-certification purposes to which they will be held. The defendants have no objection to a class definition with such a limitation. The class is therefore ascertainable.

10

## C. Overbreadth

The defendants also contend that the class definition is overbroad. According to the defendants, the proposed classes are overbroad because "Fastaff" in the class definition includes both Fastaff and defendant U.S. Nursing Corporation ("U.S. Nursing"). ECF No. 140 at 7 (citing ECF No. 130 at 1 n.1).

The objection is well-taken. All of the plaintiff's evidence concerns Fastaff, not U.S. Nursing. *See, e.g.*, ECF No. 130-3 at 9:14–20 (noting that deponent "is designated to testify about Fastaff, but not on behalf of U.S. Nursing); ECF No. 130-4 at 8:23–9:4 (same); ECF No. 130 at 9–13 (arguing Fastaff practices). And the defendants have adduced evidence indicating that U.S. Nursing's practices regarding housing subsidies differed from Fastaff's. ECF No. 140-6 at 4. To the extent a potential class member was subject only to U.S. Nursing's employment practices, then, the plaintiffs' class-wide evidence may not apply to that member.

The plaintiffs protest. They argue first that Fastaff and U.S. Nursing are joint employers. ECF No. 144 at 10. But they did not raise the joint-employer issue as one common to the class. *See Luviano v. Multi Cable, Inc.*, No. CV 15-05592-BRO-FFM, 2017 WL 3017195, at *15 (C.D. Cal. Jan. 3, 2017) ("Plaintiff's argument and evidence suffices to establish that central aspects of the 'joint employer' theory can be determined on a common basis; the inquiry need not devolve into individualized investigation of how each IT interacted with TWC Defendants."). And relying on this assertion in the motion — which, in turn, relies mainly on a reading of letterhead, ECF No. 130-1 ¶ 4 — to counter the defendants' argument would be odd, given that "it is improper to advance a decision on the merits to the class certification stage" such as one about "whether" a party "was a joint employer." *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI-JLT, 2011 WL 6153276, at *20 (E.D. Cal. Dec. 12, 2011) (quoting *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983)), *recommendation adopted*, 2012 WL

11

292977 (E.D. Cal. Jan. 31, 2012). The plaintiffs also note that no dispositive motion has been filed regarding U.S. Nursing's employment (or lack thereof) of the plaintiffs and that the FLSA collective action includes both defendants. But they cite no case indicating that either fact has any relevance to the Rule 23 inquiry, nor is it clear why they should. Including U.S. Nursing employees, then, is overbroad.

Of course, "the problem of a potentially 'over-inclusive' class 'can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (quoting *Messner*, 669 F.3d at 825). Doing so here is simple: "Fastaff" should mean Fastaff in the class definition. There is no need to deny certification on this basis.

### D. Numerosity

That brings the analysis to Rule 23's requirements. The plaintiffs indicate, based on discovery and FLSA opt-ins, that the California Class would have at least 635 members, the New York Class would have at least 580, the New Jersey Class would have at least 367, and the Oregon Class would have at least 50. ECF No. 130-1 ¶¶ 5-1 to 5-2. The defendants do not disagree. This suffices to show numerosity. *Krant*, 2024 WL 5187565, at *5.

### E. Commonality and Predominance

Because "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions," the Court analyzes the two requirements together. *Brayman*, 83 F.4th at 838 (quotation marks omitted). The plaintiffs enumerate several common questions:

> (1) whether Fastaff maintained a common policy of paying stipends to its nurses; (2) whether payment of those stipends was tied to the quantity of work performed by the nurse; (3) whether Fastaff maintained a common policy of excluding the

value of stipends from the regular rate when paying overtime to its nurses; and (4) whether those stipends functioned as wages meant to compensate nurses for their work and therefore should have been included in the regular rate.

ECF No. 130 at 16. At least with respect to the New York, California, and New Jersey classes, addressing these common questions will "resolve an issue that is central to the validity of each one of the claims in one stroke" and "generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quotation marks omitted). In particular, resolving them will address whether the stipends were part of the nurses' regular rate, a central part of calculating overtime wages.

That is so because each one of these states follows the FLSA's definition of "regular rate." *See Martinez v. Alimentos Saludables Corp.*, No. 16 CV 1997 (DLI) (CLP), 2017 WL 5033650, at *16 (E.D.N.Y. Sept. 22, 2017) ("The FLSA provides that overtime pay should be calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater. New York law also requires that employees be compensated at "one and one-half times the employee's regular rate of pay" and provides that the regular rate should be calculated "in the manner and methods provided in" the FLSA." (citing 29 U.S.C. § 207; 29 C.F.R. § 778.107; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2)); *Culley v. Lincare Inc.*, 236 F. Supp. 3d 1184, 1190 (E.D. Cal. 2017) ("The parties dispute whether Plaintiff's bonus should have been included in her regular rate of pay for purposes of calculating her overtime rate. When defining the term 'regular rate of pay,' California courts look to the FLSA."); *Tan v. PKLL Inc.*, No. CV 23-02512(JKS)(CLW), 2024 WL 1673352, at *3 (D.N.J. Apr. 18, 2024) ("The FLSA requires that an employee receive overtime pay for work performed over 40 hours in any workweek at a rate not less than one and a half times the employee's regular rate of pay. The NJWHL mirrors its federal counterpart. . . . Thus, the Court considers Plaintiff's FLSA and NJWHL claims together."). And under the FLSA, "[d]etermining what is included in the regular rate of pay . . .

13

must be discerned from what actually happens under the governing employment contract."
*Clarke v. AMN Servs., LLC*, 987 F.3d 848, 853 (9th Cir. 2021) (quoting *Newman v. Adv. Tech. Innovation Corp.*, 749 F.3d 33, 37 (1st Cir. 2014)). "Every circuit to consider whether a payment scheme is excludable from the FLSA's regular rate as reimbursement for work-related expenses has assessed how the payments function . . . ." *Id.* at 854. Common evidence shows how the stipends function, making it a common issue.

Fastaff's policies, for instance, outline when those stipends are paid to travel nurses and when they are withheld; those policies also uniformly exclude the stipends from Falstaff's calculations of the regular rate. ECF No. 140-3 at 38:22–39:17; ECF No. 130-4 at 19:12–20, 36:5–15, 47:20–48:14. The issue of "whether Fastaff's policy of excluding the value of the" stipends "from the regular rate properly compensates class members pursuant to California," New Jersey, and New York law is therefore a "common question." *Dalchau v. Fastaff, LLC*, No. 17-cv-01584-WHO, 2018 WL 1709925, at *7 (N.D. Cal. Apr. 9, 2018).

The defendants demur. *Clarke*'s "function test," they say, is an outlier, and the real test is whether stipends "reasonably approximate the expense incurred," 29 C.F.R. 778.217(a), requiring an examination of actual expenses for each employee. ECF No. 140 at 10 (citing *Sharp v. CGG Land (U.S.), Inc.*, 840 F.3d 1211, 1215 (10th Cir. 2016)).

The suggestion misconstrues the plaintiffs' claims. Whether the stipends were reasonable approximations for expenses becomes relevant only if they are "[p]ayments made by the employer to cover . . . expenses" that were "incur[red] on [the] employer's behalf." 29 C.F.R. § 778.217(a). *Clarke*'s test addresses that threshold inquiry: whether the payments "function as remuneration for hours worked rather than reimbursement for expenses." 987 F.3d at 856. Thus, even after the "[p]arties stipulated that" the relevant "payments were reasonable amounts to

14

compensate [e]mployees for their approximate meal expenses while away from home," *Sharp*, 840 F.3d at 1215, the court still analyzed whether "the per diems functioned to reimburse expenses" to determine whether they "were properly excluded from the regular rate of pay." *Clarke*, 987 F.3d at 855–56 (citing *Sharp*, 840 F.3d at 1215). In other words, the defendants' analysis "improperly makes the *amount* of the payments—rather than how the payments *function*—determinative." *Id.* at 856. A "payment can both be reasonable in amount as reimbursement for an employee for her expenses and still *function* as a wage." *Id.* at 855. Indeed, that is the plaintiffs' contention here: they never allege that the stipend amounts they received were unreasonable, instead positing that the stipends nevertheless functioned as wages because Fastaff deducted them for missed shifts.

The defendants also contend that the plaintiffs' common evidence proves the defendants' arguments on the merits. ECF No. 140 at 12. That may be, but such an argument alleges "a fatal similarity — [an alleged] failure of proof as to an element of the plaintiffs' cause of action," which "is properly addressed at trial or in a ruling on a summary-judgment motion," not "in deciding whether to certify a proposed class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013). It therefore provides no reason not to certify the class here.

Finally, the defendants fault the plaintiff's reliance on FLSA precedent to analyze commonality and predominance. ECF No. 140 at 9–10, 14. With respect to the New York, New Jersey, and California classes, the argument is quizzical. To be sure, the analogous statutes from these states may have "different purposes" than the FLSA such that they permit damages above and beyond those in the FLSA, *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 382 (E.D.N.Y. 2013), but the defendants never explain how this militates against there being common proof to prove these claims when they all follow the FLSA's liability standards.

15

The Oregon class, however, stands apart. It is true that "[b]oth the FLSA and Oregon law require employers to pay overtime wages of 1.5 times the employee's regular hourly rate of pay." *Montoya v. Rose City Taqueria LLC*, No. 3:21-cv-1889-YY, 2022 WL 18282872, at *3 (D. Or. Nov. 28, 2022), *recommendation adopted*, 2023 WL 184972 (D. Or. Jan. 13, 2023). But "where the statutory terms of Oregon and federal law are not the same, the FLSA provides no guidance for interpreting different Oregon statutory terms." *Cortes-Diaz v. DL Reforestation, Inc.*, No. 1:20-cv-00666-CL, 2022 WL 833334, at *5 (D. Or. Mar. 21, 2022). "For example, in *Young v. State of Oregon*, the Oregon Court of Appeals confronted [an] . . . issue in interpreting the phrase 'regular rate [of pay],' which is used both in Oregon wage and hour law and the FLSA." *Id.* at *6 (quoting 96 P.3d 1239, 1244 (Or. App. 2004)). The Court of Appeals followed FLSA precedent, but the Oregon "Supreme Court reversed, holding that the words of the Oregon statute should be construed, instead, according to their plain meaning as adopted by the Oregon legislature." *Id.* (citing *Young v. State of Oregon*, 133 P.3d 915, 918–19 (Or. 2006)). Whether Oregon's state overtime statute follows *Clarke*, then, is an issue for which the plaintiffs provided no analysis. ECF No. 144 at 3–4. It is their "strict burden of proof," *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013), to show conformance to Rule 23's requirements, and leaving the Court to guess at whether proof of an FLSA claim would also suffice under Oregon law cannot satisfy that burden. The Court therefore cannot certify the Oregon class.

With respect to the other three state classes, though, commonality is satisfied. And the defendants' arguments on predominance mirror their commonality arguments. *See* ECF No. 140 at 13–15. They raise no other individualized issues and, as such, predominance is satisfied. *See Dalchau*, 2018 WL 1709925, at *10.

### F.  Typicality

Plaintiffs Egan, Rideout, Berdoll, and Scalia each took a travel assignment for Fastaff in the states they seek to represent, and each received a stipend, worked overtime, and did not have the stipend included in their regular rate. ECF No. 130-41 ¶¶ 10–11 (Egan); ECF No. 130-35 ¶¶ 6–7 (Rideout); ECF No. 130-40 ¶¶ 8–9 (Berdoll); ECF No. 130-37 ¶¶ 5–6 (Scalia). Their claims are therefore typical of the classes they seek to represent. The defendants' only contention to the contrary relates to the plaintiffs' ability to prove their actual housing expenses but, as discussed above, the focus on actual expenses compared with the stipends misapprehends the plaintiffs' claims. It is no obstacle to typicality.

### G.  Adequacy

The named plaintiffs have the same interests as the classes they seek to represent: maximizing recovery for their claims. There are no conflicts of interest that any party has raised for these plaintiffs. And plaintiffs' counsel, as well as their firm, have extensive experience in wage litigation. *See* ECF No. 130-1 ¶¶ 17–21; ECF No. 130-2. The defendants do not contend otherwise. Adequacy is satisfied here.

### H.  Superiority

Finally, a class action is superior. Given the size of each nurse's overtime claim, it would be difficult to litigate them individually. But asserting them collectively may vindicate their wage rights as a group, should they prevail. Each enumerated factor also favors superiority. The size of individual claims is relatively small, and each one is closely related to the class claims, meaning that the class members' interest in individual control is slight. Fed. R. Civ. P. 23(b)(3)(A). There is no other pending litigation concerning this controversy. Fed. R. Civ. P. 23(b)(3)(B). Fastaff is located in Colorado, ECF No. 112 ¶ 12, making this District an appropriate forum. Fed. R. Civ. P. 23(b)(3)(C). And the parties raise no anticipated issues with

17

respect to manageability, apart from the commonality concerns rejected above. Fed. R. Civ. P. 23(b)(3)(D).

The defendants do not dispute that analysis. Instead, they protest that because an FLSA opt-in collective action already exists, state-law class actions are not superior. ECF No. 140 at 15 (citing *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 992 (C.D. Cal. 2006)). But "[m]ost courts have rejected this argument." Newberg & Rubenstein § 23:34. Indeed, "if these actions were to proceed separately—the FLSA in federal court and the state-law class action in state court—an entirely different and potentially worse problem of confusion would arise, with uncoordinated notices from separate courts peppering the employees." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 978 (7th Cir. 2011). "As a general rule, it will usually be preferable if the notice comes from a single court, in a unified proceeding, where the court and lawyers alike are paying close attention to the overall message the participants will receive." *Id.* "Only a few outlier decisions reached the contrary conclusion." Newberg & Rubenstein § 23:34. And while some older cases in this District reside in the latter category, *see In re Am. Fam. Ins. Co. Overtime Pay Litig.*, 638 F. Supp. 2d 1290, 1298–1300 (D. Colo. 2009), "the most recent cases arising in this District tend toward approving such arrangements" in which the FLSA collective action and the state-law class action live side by side. *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016). The existence of an FLSA collective action, then, is no reason to deny certification.

In sum, the plaintiffs satisfy their burden of showing that three of the four state-law overtime classes satisfy Rule 23's requirements. The California, New York, and New Jersey overtime classes will be certified.

18

## II.    The Bait-and-Switch Classes

The plaintiffs seek to certify the following class based on its allegations that Fastaff should have, but did not, disclosed that travel nurses' pay would be subject to a reduction if the facility's bill rate was also reduced.

> **The Nationwide Class:** All individuals who entered into an agreement with Fastaff to work a travel assignment and experienced a reduction in total compensation imposed by Fastaff before the agreed-upon term ended.

ECF No. 131 at 14. Their bid to certify that class, though, is premised upon Colorado law applying to their claims, regardless of where the nurse actually worked. If the plaintiffs fail to demonstrate such nationwide application of law, they alternatively seek to certify:

> **The Alternative Class:** All individuals who entered into an agreement with Fastaff to work a travel assignment in California, Massachusetts, or New York and experienced a reduction in total compensation imposed by Fastaff before the agreed-upon term ended.

*Id.* Egan, Barker, and Berdoll seek to represent classes in those states, respectively. The plaintiffs also seek to certify two subclasses:

> **The California Labor Code § 970 Subclass**: All persons who entered into an assignment agreement with Fastaff to work in a facility located in California, and who traveled into, out of, or within California for purposes of that assignment and who experienced a reduction in total compensation imposed by Fastaff before the end of the agreed upon term.

> **The California UCL Subclass**: All persons who entered into an agreement with Fastaff to work at a facility or location in California who experienced a reduction in total compensation imposed by Fastaff before the end of the agreed upon term.

*Id.* Because the question of which class is at issue depends on the choice-of-law question, the analysis begins there.

### A.  Choice of Law

As the Court previously stated, Colorado choice-of-law principles apply in this case.

2024 WL 719006, at *4 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

19

Colorado has "adopt[ed] the general rule of applying the law of the state with the most 'significant relationship' with the occurrence and the parties, as presented and defined in the Restatement, (Second) Conflict of Laws, Vol. 1, Sec. 145 (1969)." *First Nat'l Bank in Fort Collins v. Rostek*, 514 P.2d 314, 320 (Colo. 1973).

As a threshold matter, the plaintiffs contend that the Court has already determined that no conflict of law exists and, thus, there is no need for a conflict-of-law analysis. ECF No. 145 at 2. But the Court's previous application of Colorado law relied on the parties' "agree[ment]" on the motion to dismiss "that there [was] no 'outcome determinative conflict between the potentially applicable bodies of law.'" 2024 WL 719006, at *4 (quoting *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 (D. Colo. 2017)). No such agreement exists here. *See* ECF No. 139 at 2. Moreover, on the previous motion, only three states' laws were at issue. *See Egan,* 2024 WL 719006, at *4. Here, the plaintiffs seek to certify a nationwide class spanning all fifty states. They make no attempt to show a lack of conflict between all of those jurisdictions, nor is it likely that they could. Accordingly, a conflicts analysis is necessary.

"Section 145 [of the Restatement] lists general factors a court should consider in making choice of law determinations in tort cases; its commentary also suggests following rules focusing on particular torts whenever such rules apply." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1536 (10th Cir. 1996). Here, the claims the plaintiffs seek to litigate through the bait-and-switch classes include fraud and misrepresentation, unjust enrichment, and promissory estoppel. *See* ECF No. 131 at 18–19.

"Section 148 [of the Restatement] provides . . . a rule specifically addressing fraud and misrepresentation claims." *Trierweiler*, 90 F.3d at 1536. That section lists the following contacts

to consider "[w]hen," as here, "the plaintiff's action in reliance took place in whole or in part in a

state other than that where the false representations were made":

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's
> representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business
> of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between
> the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he
> has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2). Here, the plaintiffs acted in reliance upon

Fastaff's representations in the states where they were assigned and, to a lesser extent, in their

home states as well. They received the representations in their home states, where they are

domiciled. Fastaff is located in Colorado, where it made the representations. No tangible thing is

the subject of the transaction between the parties. And the place of performance is the states

where the plaintiffs were assigned. "If any two of the above-mentioned contacts, apart from the

defendant's domicil, state of incorporation or place of business, are located wholly in a single

state, this will usually be the state of the applicable law with respect to most issues." *Id.* cmt(j).

Here, two contacts point to the law of the states of assignment, though one is shared with the

plaintiffs' home states. And here, unlike a case in which the injury happened to depend on the

particular Chipotle restaurant a customer visited on any given day, *Gordon v. Chipotle Mexican

Grill, Inc.*, 344 F. Supp. 3d 1231, 1245 (D. Colo. 2018), the location of the plaintiffs'

assignments was specifically contemplated by the parties. Aside from the defendant's domicil,

only one other contact points to Colorado. The states of assignment, then, have the most

significant contacts to the fraud claims.

21

Given that the plaintiffs only seek to certify the Nationwide Class if Colorado law applies to all of its members, ECF No. 145 at 9–10, there is no need to proceed further with the choice-of-law analysis. The Alternative Class's conformance with Rule 23 is therefore at issue.

## B. Adequacy

Because adequacy here affects the analysis of the other Rule 23 factors, the evaluation of those factors begins with it.

The defendants challenge Egan's adequacy to represent the class, though they frame it as a typicality argument. ECF No. 139 at 13; *see McFarlane v. Carothers*, No. 4:15-CV-00176-SEB-DML, 2017 WL 9533071, at *2 n.4 (S.D. Ind. Feb. 9, 2017) (addressing argument "that . . . claims are not typical of those of the class because [named plaintiff] suffered no damages . . . in connection with adequacy"), *report and recommendation adopted*, 2017 WL 1190602 (S.D. Ind. Mar. 31, 2017), *on reconsideration in part*, 2018 WL 4625660 (S.D. Ind. Sept. 27, 2018). Amongst other things, they note that Egan had three assignments with Fastaff. During the first and third assignments, Fastaff paid the same rate for the entire assignment. ECF No. 139-4 at 36:14–21, 54:4–55:4. For the second assignment, which Egan characterized as an extension of her first, the rate changed from $85 to $70 an hour, but because the assignment was ultimately canceled, Egan never worked at that reduced rate. *See id.* at 42:23–44:15. Because Egan never suffered damages from Fastaff's allegedly illegal practices, they say, she cannot represent a class of persons who did suffer such damages.

"[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.'" *Dukes*, 564 U.S. at 348–49 (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). A plaintiff who "suffered no injury . . . is thus an inadequate class representative." *In re Wiley*, 237 B.R. 677, 684 (Bankr. N.D. Ill. 1999). Here, the plaintiffs aver that class damages are "the difference between the

promised pay rates in [the nurses'] AALs and the reduced rates they actually received after Fastaff unilaterally cut their compensation." ECF No. 145 at 10–11. By that measure, Egan's damages were zero; there is little incentive, then, for her to pursue maximum recovery for the bait-and-switch class as its representative.

The plaintiffs protest. They do not contend that Egan suffered damages. Instead, they argue that because Fastaff directed the same conduct — an unjustified rate change — at Egan, her lack of damages is irrelevant. *Id.* at 11. But they cite no case explaining why that would be. And there is good reason to think that no such case would exist. To have constitutional standing to bring a case, for instance, a "plaintiff must have suffered an injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). And the plaintiffs concede that the bait-and-switch claims Egan would pursue likewise require damages. *See* ECF No. 130-34. A representative without those incentives to pursue a case can hardly be said to share the same interest as the absent members who have damages.

Without an adequate class representative, the Court cannot certify the California bait-and-switch classes the plaintiffs seek here.

The defendants raise no other adequacy challenges. The other named plaintiffs, Barker and Berdoll, have the same interests as the classes they seek to represent. There are no conflicts of interest that any party has raised for these plaintiffs. And plaintiffs' counsel, as well as their firm, have extensive experience in wage litigation. *See* ECF No. 130-1 ¶¶ 17–21; ECF No. 130-2. The defendants do not contend otherwise. Adequacy is otherwise satisfied here.

## C. Commonality and Predominance

Because the plaintiffs fall short in their efforts to demonstrate predominance on the issue of reliance, and because that failure is dispositive of the motion, the Court next turns to this factor.

23

"[T]he predominance inquiry begins 'with the elements of the underlying cause of action.'" *Black*, 69 F.4th at 1175 (quoting *CGC Holding*, 773 F.3d at 1088). Here, those causes of action include fraudulent inducement, fraudulent concealment, and negligent misrepresentation under New York and Massachusetts law. In Massachusetts, "To recover for fraudulent misrepresentation, a plaintiff must allege and prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to her damage." *Masingill v. EMC Corp.*, 870 N.E.2d 81, 88 (Mass. 2007) (quotation marks omitted). "The standards for common law fraud and fraudulent inducement are the same . . . ." *United States v. President and Fellows of Harvard Coll.*, 323 F. Supp. 2d 151, 199 (D. Mass. 2004). Regarding negligent misrepresentation, "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Lawton v. Dracousis*, 437 N.E.2d 543, 547 (Mass. App. Ct. 1982) (quoting Restatement (Second) of Torts § 552(1)).

In New York, "to establish . . . fraudulent inducement," a party must "establish the existence of 'a material representation, known to be false, made with the intention of inducing reliance, upon which the victim actually relies, consequently sustaining a detriment.'" *Trahwen, LLC v. Ming 99 Cent City No. 7, Inc.*, 965 N.Y.S.2d 264, 265 (N.Y. App. Div. 2013) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Grp., LLC*, 798 N.Y.S.2d 14, 16 (N.Y. App. Div. 2005)). "A claim for fraudulent concealment must allege (1) nondisclosure of

24

(2) material facts, in the face of (3) a duty to disclose, (4) scienter, (5) reliance, and (6)

damages." *In re New York Trap Rock Corp.*, 42 F.3d 747, 754 (2d Cir. 1994). And "a claim for

negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or

privity-like relationship imposing a duty on the defendant to impart correct information to the

plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."

*Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011).

 All of these causes of action require proving actual reliance and, often, justifiable or

reasonable reliance. "[C]ourts often deny Rule 23(b)(3) class certification in basic fraud cases

(and other reliance-related cases) on the grounds that the individualized nature of the reliance

inquiry means the predominance test cannot be met." Newberg & Rubenstein § 4:58. "Despite

the generalized concern about the individual nature of the misrepresentations and/or reliance

inquiry in fraud cases, there are at least three recurring situations in which courts have found

common issues predominant in fraud cases: (1) those in which reliance is common across the

class; (2) those in which courts have excused a showing of individual reliance; and (3) those in

which the underlying law does not require a showing of individual reliance." *Payne v. Tri-State

CareFlight, LLC*, 332 F.R.D. 611, 669 n.19 (D.N.M. 2019) (quoting Newberg & Rubenstein

§ 4:58). The plaintiffs rely on the first of these three situations.

 As a threshold matter, the defendants contend that this prong requires a showing that no

rational class member would have contracted with Fastaff if the material omission had been

disclosed. ECF No. 139 at 10. That is not the law. Courts "have permitted inferences of reliance

when it follows logically from the nature of the scheme, and there is common, circumstantial

evidence that class members relied on the fraud." *Torres v. S.G.E. Mgmt., LLC*, 838 F.3d 629,

641 (5th Cir. 2016) (en banc). And while "the Tenth Circuit approved the theory of inferred

reliance after concluding that no rational actor would join the scheme had he or she known of the fraud," it did not "limit[] an inference of reliance to that situation." *Id.* at 642 (citing *CGC Holding*, 773 F.3d at 1091–92 & n.8). Thus, in examining how the element of reliance affects predominance, a court analyzes whether the case allows for a class-wide inference of reliance, not whether no rational actor would have entered into agreements but for the alleged fraud.

Here, at first glance, there is reason to think a class-wide inference of reliance could exist. The AALs at issue here are automatically and uniformly generated through a software program. *See* ECF No. 130-3 at 36:14–45:11. Those AALs contain a pay rate, but Fastaff has no writing telling travel nurses that their pay rates can be reduced in the middle of an assignment. *Id.* 130-3 at 82:11–19. Nevertheless, those pay rates could be reduced based on the facility's bill rate. *See id.* 78:8–79:6. "Thus, the basic misrepresentation giving rise to the fraud claim is uniform . . . and written." *Smith v. MCI Telecommc'ns Corp.*, 124 F.R.D. 665, 678 (D. Kan. 1989). And one could infer that the nurses' "reliance on the" AAL's omissions regarding the possibility of pay-rate reductions "is demonstrated simply by their employment with" Fastaff because "[i]t is implausible that, in initiating or continuing their employment with" Fastaff, the nurses "did not rely on the" AALs "which they were required to sign." *Id.* at 679; *cf. Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004) ("A jury could quite reasonably infer that guarantees concerning physician pay—the very consideration upon which those agreements are based—go to the heart of these agreements, and that doctors based their assent upon them."), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

But that does not end the story. The defendants point out that the plaintiffs each accepted additional Fastaff assignments after the assignments on which their pay rates were allegedly reduced. ECF No. 139 at 10. And, at least in Massachusetts, reasonable reliance means that the

26

omission or misrepresentation at issue "materially influenced" a plaintiff "to take the particular action that the wrongdoer intended he should take as a result of such representations and that otherwise he would not have taken such action." *Nat'l Shawmut Bank of Bos. v. Johnson*, 58 N.E.2d 849, 852 (Mass. 1945). At any trial in this matter, then, the defendants may combat any class-wide inference of reliance with evidence that individual plaintiffs would not have rejected their AALs had they known of the possibility of pay-rate decreases because they in fact accepted similar AALs even after having learned of Fastaff's allegedly fraudulent practices.

Nor do the plaintiffs contend otherwise. Indeed, their reply ignores this argument from the defendants altogether. *See* ECF No. 145. Thus, even if there were some principle under Massachusetts or New York law or some set of facts rendering irrelevant the class representatives' acceptance of AALs after revelation of the plaintiffs' omission about the possibility of pay-rate reduction, the plaintiffs have not alerted the Court to any such thing. Given that it is the plaintiffs' "strict burden of proof," *Roderick*, 725 F.3d at 1218 (quotation marks omitted), to demonstrate Rule 23 compliance, the apparent need to litigate individual decisions to accept or decline AALs following a nurse having learned of Fastaff's practices makes the issue of reliance an individualized one.

There are other issues — such as whether Fastaff made any such misrepresentation or whether Fastaff knew that its offered pay rates were not certain prior to issuing the AALs — that might be handled in a common manner. But "efforts to certify classes based on causes of action that require an element of causation . . . often turn on whether the class can demonstrate that reliance is susceptible to generalized proof." *CGC Holding*, 773 F.3d at 1089. Here, the plaintiffs have not shown that reliance is so susceptible and, as such, they have not met their burden as to predominance as to their fraud claims.

27

The Alternative Class also includes claims of promissory estoppel and unjust enrichment, but the Court previously found that these depend on the fraud claims. 2024 WL 719006, at *10. As such, they suffer from the same deficiencies as the fraud claims for certification purposes.

In short, the potential need to litigate reliance individually undermines a finding of predominance, preventing certification.

## CONCLUSION

For the foregoing reasons, the plaintiffs' Motion for Class Certification of State Law Overtime Claims, ECF No. 130 (with a public entry at ECF No. 132), is **GRANTED in part**. The Court certifies the following classes:

> **The California Class**: Any person who entered into an agreement with Fastaff to work at a facility in California who (1) worked more than 40 hours in a workweek or 8 hours in a work day, (2) who was paid a stipend during that workweek or work day, and (3) whose regular rate of pay did not include the value of that stipend from three years (Cal. Lab. Code § 510 overtime claim) or four years (derivative Unfair Competition Law claim) prior to the filing of the Complaint through the date of the Court's class certification order.

> **The New York Class**: Any person who entered into an agreement with Fastaff to work at a facility in New York who (1) worked more than 40 hours in a workweek, (2) who was paid a stipend during that workweek, and (3) whose regular rate of pay did not include the value of that stipend from six years prior to the filing of the Complaint through the date of the Court's class certification order.

> **The New Jersey Class**: Any person who entered into an agreement with Fastaff to work at a facility in New Jersey who (1) worked more than 40 hours in a workweek, (2) who was paid a stipend during that workweek, and (3) whose regular rate of pay did not include the value of that stipend from six years prior to the filing of the Complaint through the date of the Court's class certification order.

"Fastaff" in these classes is defined to mean Fastaff, LLC. "Stipends" are the housing and meals and incidentals stipends Fastaff offered. Additionally, the Court **APPOINTS** Plaintiffs' counsel Alexander T. Ricke and Stueve Siegel Hanson LLP as class counsel.

The plaintiffs' Motion for Rule 23(b)(3) Certification of Bait-and-Switch Classes, ECF

No. 131 (with a public entry at ECF No. 133), is **DENIED**.

Dated this 30th day of September, 2025, at Denver, Colorado.

BY THE COURT:

_____

Cyrus Y. Chung
United States Magistrate Judge